DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
PETER C. HOLM, SBN 299233
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
dkramer@wsgr.com
mrees@wsgr.com
lwhite@wsgr.com
pholm@wsgr.com

BRIAN M. WILLEN, *admitted pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| PRAGER UNIVERSITY, | CASE NO.: 5:17-cv-06064-LHK |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | |
| GOOGLE LLC, a Delaware corporation, YOUTUBE, LLC, a Delaware limited liability company, and DOES 1-25, | Date:    March 15, 2018 |
| | Time:    1:30 PM |
| Defendant. | Dept.:   8, 4th Floor |
| | Before: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................... 1

STATEMENT OF REQUESTED RELIEF ....................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

INTRODUCTION................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 3

        A.     The YouTube Service and Terms of Use ................................................. 3

        B.     YouTube's Restricted Mode ....................................................................... 4

        C.     Content Monetization On YouTube ......................................................... 6

        D.     PragerU and Its Claims Against Google ................................................. 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

    I.       GOOGLE IS PROTECTED FROM PLAINTIFF'S CLAIMS BY
           SECTION 230 ............................................................................................. 8

        A.     Google Is Immune Under Section 230(c)(1)........................................... 9

        B.     Google Is Immune Under Section 230(c)(2)(B) ..................................... 10

    II.      GOOGLE IS PROTECTED BY THE FIRST AMENDMENT........................... 13

    III.     PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION ................. 15

        A.     Plaintiff Cannot Assert Claims Under The Federal or California
             Constitutions.................................................................................................. 15

             1.     Because YouTube is Not a State Actor, Plaintiff's Claims
                  Fail................................................................................................... 15

             2.     The *Pruneyard* Exception Does Not Apply Here ........................ 16

        B.     Plaintiff's Unruh Act Claim Fails ............................................................. 18

        C.     Plaintiff's UCL Claim Fails ........................................................................ 19

        D.     Plaintiff Fails to State a Claim For Breach of Implied Covenant ............ 21

        E.     Plaintiff's Lanham Act Claim Fails .......................................................... 23

CONCLUSION ..................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................8

*Assocs. & Aldrich Co. v. Times Mirror Co.,*
440 F.2d 133 (9th Cir. 1971) ...........................................................13, 14

*Bardin v. DaimlerChrysler Corp.,*
136 Cal. App. 4th 1255 (2006) ...............................................................21

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1095 (9th Cir. 2009) .......................................................2, 9, 10

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ....................................................... *passim*

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*
2 Cal. 4th 342 (1992) ...............................................................................21

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .............................................................................20

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.,*
886 F.2d 490 (2d Cir. 1989) ....................................................................23

*Damabeh v. 7-Eleven, Inc.,*
2013 U.S. Dist. LEXIS 66565 (N.D. Cal. May 8, 2013) .......................21

*Darnaa, LLC v. Google, Inc.,*
2015 U.S. Dist. LEXIS 161791 (N.D. Cal. Dec. 2, 2015) .....................24

*Darnaa LLC v. Google, Inc.,*
236 F. Supp. 3d 1116, 1126 (N.D. Cal. 2017) .......................................23

*Doe v. MySpace Inc.,*
528 F.3d 413 (5th Cir. 2008) ...................................................................10

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach,*
232 Cal. App. 4th 1171 (2014) ................................................................17

*e360insight, LLC v. Comcast Corp.,*
546 F. Supp. 2d 605 (N.D. Ill. 2008) ......................................................12

*Ecological Rights Found. v. Pac. Gas & Elec. Co.,*
713 F.3d 502 (9th Cir. 2013)......................................................................4

*Eidson v. Medtronic, Inc.,*
40 F. Supp. 3d 1202, 1212 (N.D. Cal. 2014) ............................................8

*Enigma Software Grp. USA LLC v. Malwarebytes Inc.,*
2017 U.S. Dist. LEXIS 184658 (N.D. Cal. Nov. 7, 2017)................11, 12

*Fair Hous. Council v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008)...............................................................................9

*Fashion Valley Mall, LLC v. National Labor Relations Bd.,*
    42 Cal. 4th 850 (2007)........................................................................................17

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011)..............................................................................8

*Foley v. Interactive Data Corp.,*
    47 Cal. 3d 654 (1988).........................................................................................21

*Fujitsu Ltd. v. Belkin Int'l, Inc.,*
    782 F. Supp. 2d 868 (N.D. Cal. 2011) .................................................................8

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n,*
    26 Cal. 4th 1013 (2001)......................................................................................16

*Gonzalez v. Google LLC,*
    2017 U.S. Dist. LEXIS 175327 (N.D. Cal. Oct. 23, 2017) ............................9, 10

*Greater L.A. Agency of Deafness Inc. v. CNN Inc.,*
    742 F.3d 414 (9th Cir. 2014)..............................................................................19

*Guz v. Bechtel Nat., Inc.,*
    24 Cal.4th 317 (2000).........................................................................................22

*Hart v. Cult Awareness Network,*
    13 Cal. App. 4th 777 (1993)...............................................................................18

*hiQ Labs Inc. v. LinkedIn Corp.,*
    2017 U.S. Dist. LEXIS 129088 (N.D. Cal. Aug. 14, 2017).........................17, 18

*Howard v. Am. Online, Inc.,*
    208 F.3d 741 (9th Cir. 2000)..............................................................................16

*Hudgens v. NLRB,*
    424 U.S. 507 (1976) ...........................................................................................15

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008)..............................................................................8

*Ingels v. Westwood One Broad. Services, Inc.,*
    129 Cal. App. 4th 1050 (2005).......................................................................18, 19

*Javorsky v. Western Athletic Clubs, Inc.,*
    242 Cal. App. 4th 1386 (2015)...........................................................................19

*Karimi v. GMAC Mortg.,*
    2011 U.S. Dist. LEXIS 136071 (N.D. Cal. Nov. 28, 2011)...............................25

*Kinderstart.com LLC v. Google Inc.,*
    2007 U.S. Dist. LEXIS 22637 (N.D. Cal. Mar. 16, 2007) .................................17

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)..............................................................................4

*Koebke v. Bernardo Heights Country Club,*
    36 Cal. 4th 824 (2005) ....................................................................................19

*Lancaster v. Alphabet Inc.,*
    2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016) ....................................9

*Langdon v. Google, Inc.,*
    474 F. Supp. 2d 622 (D. Del. 2007) ........................................................ *passim*

*Levitt v. Yelp! Inc.,*
    765 F.3d 1123 (9th Cir. 2014) ....................................................................20, 21

*Lewis v. YouTube,*
    244 Cal. App. 4th 118 (2015) .........................................................................23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S. Ct. 1377 (2014) ...............................................................................23, 24

*Lloyd Corp., Ltd. v. Tanner,*
    407 U.S. 551 (1972) .........................................................................................15

*Lopez v. Nissan N. Am., Inc.,*
    201 Cal. App. 4th 572 (2011) .........................................................................20

*Los Angeles v. Preferred Comms., Inc.,*
    476 U.S. 488 (1986) .........................................................................................13

*Marsh v. Anesthesia Servs. Med. Grp., Inc.,*
    200 Cal. App. 4th 480 (2011) .........................................................................21

*Med. Lab. Mgmt. Consultants v. ABC,*
    306 F.3d 806 (9th Cir. 2002) ...........................................................................14

*Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo,*
    418 U.S. 241 (1974) .........................................................................................13

*Munson v. Del Taco Inc.,*
    46 Cal. 4th 661 (2009) .....................................................................................19

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) ...........................................................................25

*Newcal Indus. v. Ikon Office Sol.,*
    513 F.3d 1038 (9th Cir. 2008) .........................................................................24

*Oracle Am., Inc. v. Cedarcrestone, Inc.,*
    938 F. Supp. 2d 895 (N.D. Cal. 2013) ............................................................20

*Oracle Am., Inc. v. Terix Comput. Co.,*
    2014 U.S. Dist. LEXIS 158060 (N.D. Cal. Nov. 7, 2014) ...............................24

*PruneYard Shopping Ctr. v. Robins,*
    447 U.S. 74 (1980) .....................................................................................16, 17

*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8,*
    55 Cal. 4th 1083 (2012) ...................................................................................17

*Rosado v. eBay, Inc.*,
     53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014) ..........................................................20

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
     72 Cal. App. 4th 861 (1999).........................................................................................21

*Sargoy v. Resolution Trust Corp.*,
     8 Cal. App. 4th 1039 (1992).........................................................................................19

*Sepehry-Fard v. MB Fin. Servs.*,
     2014 U.S. Dist. LEXIS 71568 (N.D. Cal. May 23, 2014) .............................................8

*Shulman v. Facebook*,
     2017 U.S. Dist. LEXIS 183110 (D.N.J. Nov. 6, 2017).................................................16

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
     144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) .........................................................9, 10

*Smith v. Pride Mobility Prods. Corp.*,
     2017 U.S. Dist. LEXIS 20195 (N.D. Cal. Feb. 12, 2017).............................................19

*Song fi v. Google Inc.*,
     108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) .................................................................22

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*
     100 Cal. App. 4th 44 (2002).........................................................................................21

*Transfresh Corp. v. Ganzerla & Assoc.*,
     862 F. Supp. 2d 1009 (N.D. Cal. 2012) .......................................................................24

*Travelers Cas. & Sur. Co. of Am. v. Highland P'ship*,
     2012 U.S. Dist. LEXIS 167458 (S.D. Cal. Nov. 26, 2012)...........................................22

*Turner Broad. v. FCC*,
     512 U.S. 622.................................................................................................................13

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*,
     463 U.S. 825 (1983) .....................................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
     317 F.3d 1097 (9th Cir. 2003).......................................................................................20

*Westlake Legal Grp. v. Yelp, Inc.*,
     599 F. App'x 481 (4th Cir. 2015)..................................................................................10

*Worldwide, LLC v. Google, Inc.*,
     2017 U.S. Dist. LEXIS 88650 (M.D. Fla. 2017)...........................................................14

*Zango, Inc. v. Kaspersky Lab, Inc.*,
     568 F.3d 1169 (9th Cir. 2009).......................................................................................11

*Zeran v. Am. Online*,
     129 F.3d 327(4th Cir. 1997)......................................................................................9, 10

*Zhang v. Baidu.com, Inc.*,
     10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014)......................................................................14

**STATUTES**

15 U.S.C. § 1125(a) ............................................................................................23, 24

47 U.S.C. § 230 ............................................................................................ *passim*

Cal. Bus. & Prof. Code § 17200 ...........................................................................20

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 8, 15

Fed. R. Civ. P. 9(b) ...........................................................................................20, 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 15, 2018, at 1:30 PM, in the United States District Court for the Northern District of California, Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, California 95113, Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") shall and hereby do move for an order dismissing with prejudice all claims advanced by Plaintiffs in their Complaint.

**STATEMENT OF REQUESTED RELIEF**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 47 U.S.C. § 230(c), Google and YouTube request that the Court dismiss all of Plaintiff's claims without leave to amend.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1) & 230(c)(2)(B), bars all but Count II of Plaintiff's claims.

2.     Whether the First Amendment to the U.S. Constitution bars all of Plaintiff's claims.

3.     Whether the Complaint should be dismissed under Rule 12(b)(6) for failure to state a viable cause of action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This lawsuit seeks to hold Google liable for its efforts to keep YouTube safe and enjoyable for all users. In so doing, Plaintiff looks to fundamentally redefine the relationship between online service providers and their users, transforming YouTube, a private service provider, into a public forum regulated by the same constitutional standards that apply to the government. These claims fail as a matter of law and must be dismissed.

YouTube offers a free service that allows users around the world to upload and share video content. Like all responsible online service providers, YouTube has rules that allow it to exclude user-submitted material that may be unlawful, harmful, or undesirable. YouTube also recognizes that some videos, while permitted on the service, may not be appropriate for everyone, including families, students, or other sensitive users. YouTube is committed to giving users who do not wish to see such videos the tools to avoid them. One such tool is "Restricted

1  Mode," which enables users to choose an intentionally limited YouTube experience that

2  excludes videos that YouTube has determined contain potentially mature content that may not be

3  suitable for all audiences. Decisions about which videos fall into that category are often

4  complicated and may involve difficult, subjective judgment calls. When YouTube determines

5  that a video is potentially inappropriate for minors or otherwise includes more sensitive content,

6  it may classify and treat it as "potentially mature." Such videos remain available on YouTube,

7  but are not viewable by users who have chosen to enable Restricted Mode.

8      This is what Plaintiff challenges in this case. Plaintiff describes itself as a conservative

9  organization that creates YouTube videos on various political and social topics. It alleges that

10 YouTube classified certain of its videos—which addressed issues ranging from gun violence to

11 rape to Nazism—as "potentially mature." None of those videos were removed from YouTube,

12 and all of them can be viewed by users who want to find them. Instead, the result of YouTube's

13 classification was that Plaintiff's videos were not shown to users who elected to use Restricted

14 Mode. In addition, Plaintiff was restricted from running ads in connection with some of its

15 videos. Plaintiff now contends that YouTube's decisions regarding these videos violate

16 Plaintiff's constitutional, statutory, and contractual rights.

17     All of Plaintiff's claims are barred by federal law. They arise directly from YouTube's

18 decisions about whether to restrict access to videos that its users have posted. Those decisions

19 are exactly what Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C § 230(c)

20 was designed to protect. The CDA provides two distinct immunities relevant here. First, Section

21 230(c)(1) protects websites from liability for all "publication decisions," including "whether to

22 edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes v.*

23 *Yahoo!, Inc.*, 570 F.3d 1095, 1105 (9th Cir. 2009). Second, the CDA's protections extend even

24 further here because Plaintiff targets a feature of YouTube—Restricted Mode—that provides

25 users with "the technical means to restrict access to material" that Google or its users consider to

26 be objectionable. 47 U.S.C. § 230(c)(2)(B). Section 230(c)(2)(B) provides a broad immunity to

27 Google for claims based on its use of Restricted Mode and the decisions it makes about which

28 videos will be displayed to users of that technology.

1   Apart from Section 230, YouTube's decisions in regard to Plaintiff's videos are also

2   protected by the First Amendment. Those decisions reflect judgments about how to present—and

3   whether to restrict—content on YouTube's private service. Under established First Amendment

4   law, such judgments cannot be the basis for a lawsuit such as this.

5   Even beyond these broad, independent federal immunities, all of Plaintiff's claims fail as

6   matter of law. Plaintiffs cannot state a claim against Google under the First Amendment, or the

7   equivalent provision in the California Constitution, because YouTube is a private company, not a

8   state actor. Plaintiffs' radical effort to expand constitutional law to restrict the rights of private

9   online services to protect their users from potentially objectionable content is dangerous,

10  contrary to all authority, and should be rejected. Plaintiff also cannot state a claim under

11  California's Unruh Act because the Complaint does not allege any facts that plausibly suggest

12  that Google willfully discriminated against Plaintiff in violation of the law. Plaintiff's invocation

13  of California's Unfair Competition Law fails because the Complaint identifies no actions by

14  Google that were unfair, unlawful, or fraudulent. Plaintiff cannot state a claim for breach of the

15  implied covenant of good faith and fair dealing because YouTube's restrictions of Plaintiff's

16  videos were expressly authorized by the parties' contract and because any claim for damages

17  based on a breach of contract is barred by the agreement's limitation of liability provision.

18  Finally, Plaintiff fails to state a claim under the Lanham Act because the Complaint alleges no

19  facts that plausibly support an accusation of either false association or false advertising.

20  Plaintiff's claims should be dismissed. And because any amendment would be futile in

21  light of Google's broad statutory and constitutional protections, dismissal should be with

22  prejudice.

23  **FACTUAL BACKGROUND**

24  **A.    The YouTube Service And Terms of Use**

25  Google operates YouTube, a popular online service for sharing videos and related

26  content. Compl. ¶ 19, 35. Every day, YouTube users around the world upload and view billions

27  of hours of video content on a nearly limitless range of topics. *Id.* ¶¶ 36, 38. YouTube is

28

1    available to the general public to use without charge, but also provides subscription-based

2    services, including premium channels and ad-free access to the website. *Id.* ¶ 38.

3        YouTube allows users "permission to access and use the Service," provided they agree to

4    YouTube's Terms of Service and Community Guidelines. *Id.* ¶¶ 36, 44. Pursuant to these terms,

5    YouTube "reserves the right to decide whether Content violates [its] Terms of Service" and

6    "reserves the right to remove Content." Declaration of Brian Willen ("Willen Decl."), Ex. 1.[1]

7    YouTube's Community Guidelines, which are incorporated in YouTube's Terms (*id.*), set out

8    twelve "common-sense rules" about prohibited content, including "hateful content" and "harmful

9    or dangerous content." Compl. ¶ 44; Willen Decl., Ex. 2.

10       **B.      YouTube's Restricted Mode**

11       YouTube recognizes that some videos may not violate its Terms of Service and

12   Community Guidelines but nevertheless may not be appropriate for all audiences. Compl. ¶ 45;

13   Willen Decl., Ex. 3. To that end, YouTube has additional policies that allow it to age-restrict or

14   otherwise limit the availability of videos so that its younger or more sensitive users can avoid

15   them. *See, e.g.*, Willen Decl., Exs. 3, 4, 5 & 10.

16       One of the tools that YouTube makes available for this purpose is called "Restricted

17   Mode." "Restricted Mode was created to provide viewers who wanted to better control the

18   content they see on YouTube with an option to choose an intentionally limited YouTube

19   experience." Compl. ¶ 41. It is "an optional setting ... to help screen out potentially mature

20   content that you may prefer not to see or don't want others in your family to see." *Id*. Restricted

21   Mode is turned off by default, but can be enabled for use by individuals, families, and

22   institutions that may provide online access to the public—such as schools, businesses, and

23

24       [1] The Complaint repeatedly quotes from, references, and relies upon several public-facing
     policies and contracts that govern the parties' relationship. These include YouTube's Terms of

25   Service (*e.g.* Compl. ¶¶ 5-7, 44, 112), Community Guidelines (*e.g. id.* ¶¶ 5-6, 44), Policy Center
     guidelines (*e.g., id.* ¶¶ 4, 41-43, 45-46), Reporting Center guidelines (*e.g. id.* ¶ 46), AdSense

26   program policies and Advertiser-friendly content guidelines (*e.g. id.* ¶¶ 66, 91), and AdSense
     Terms of Service (*e.g. id.* ¶ 109). Because these documents are thus incorporated by reference,

27   the Court may properly consider them. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.,*

28   713 F.3d 502, 511 (9th Cir. 2013); *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).

1   libraries. *Id.* When deciding whether to enable Restricted Mode on a given device, YouTube

2   users are notified that "Restricted Mode hides videos that may contain inappropriate content

3   flagged by users and other signals. No filter is 100% accurate, but it should help you avoid most

4   inappropriate content." Willen Decl., Ex. 6.

5          To give effect to the preferences of users who employ Restricted Mode, YouTube

6   designates certain videos as "age restricted" (Compl. ¶¶ 45-46) or treats them as "potentially

7   mature" (*id.* ¶ 42). The "potentially mature" category includes content that falls within six

8   general categories, including "graphic depictions of violence … even violence in the news," and

9   "events related to terrorism, war, crime, and political conflicts … even if no graphic imagery is

10  shown." *Id.* ¶ 42; Willen Decl., Ex. 3. Neither "potentially mature" nor age-restricted videos are

11  available to the small minority of users who have affirmatively chosen to turn on the Restricted

12  Mode feature. But such videos remain publicly available on the service for users who want to

13  view them. Willen Decl., Ex. 3.

14          YouTube determines which videos will be unavailable in Restricted Mode in two

15  different ways. First, YouTube uses an "automated filtering algorithm that examines certain

16  'signals' like the video's metadata, title, and the language used in the video" to determine

17  whether the video should be classified as potentially mature or age-restricted. Compl. ¶ 43.

18  Second, human reviewers may apply those designations after manually reviewing videos that

19  have been flagged by users or classified by the automated filtering system. Willen Decl., Ex. 3;

20  *see also* Compl. ¶¶ 43, 66. While YouTube "aim[s] to apply the same standards to everyone," *id.*

21  ¶ 54, given the inherently subjective and context-specific judgments necessary to determine

22  whether a video falls within the categories of content covered by Restricted Mode, YouTube

23  acknowledges that "Restricted Mode will never be perfect." *Id.* ¶ 51; *see also id.* ¶¶ 10, 48-50.

24          YouTube informs users that their videos may be age-restricted or otherwise made

25  unavailable in Restricted Mode at YouTube's discretion. *See, e.g.*, Willen Decl., Ex. 2 ("Videos

26  showing such harmful or dangerous acts may get age-restricted or removed depending on their

27  severity."); *see also id.*, Exs. 3, 4 & 5. Users who believe that their videos have been incorrectly

28  excluded from Restricted Mode can appeal that determination. Compl. ¶ 46; Willen Decl., Ex. 3;

---

1   *see also id.*, Ex. 7; Compl. ¶¶ 47, 53. That process may lead YouTube to change whether a video

2   is available in Restricted Mode. Such changes can also happen when Google manually reviews

3   videos that have previously been classified only by the automated filtering algorithm. Willen

4   Decl., Ex. 3; *see also e.g.*, Compl. ¶¶ 50-51, 72, note 2.

5           **C.      Content Monetization On YouTube**

6           YouTube users also may also "monetize" videos they upload—that is, they can share in

7   advertising revenue that those videos generate. *See* Compl. ¶ 14. To be eligible for monetization,

8   a video must comply with both YouTube's Terms and Community Guidelines and YouTube's

9   AdSense Program Policies, including guidelines designed to prevent ads from appearing in

10  connection with videos that might feature objectionable content. Willen Decl., Ex. 8. These

11  guidelines are similar to the Restricted Mode guidelines. *Id.*, Exs. 3 & 6. But some videos that

12  are not available in Restricted Mode may still be eligible for monetization when displayed to

13  users that do not have Restricted Mode enabled. *Id.*, Ex. 3.

14          YouTube uses "technology and policy enforcement processes to determine if a video is

15  suitable for advertising" and its agreements with video creators give it the express right not to

16  monetize (or to "de-monetize") user-submitted videos. Compl. ¶¶ 66, 67, 81; Willen Decl., Exs.

17  9 & 8. Here too, users may appeal YouTube's monetization decisions and have their videos

18  manually reviewed for advertiser-suitability. Willen Decl., Ex. 8.

19          **D.      PragerU and Its Claims Against Google**

20          Plaintiff Prager University ("PragerU") is a media organization that "seeks to provide

21  conservative viewpoints and perspectives on public issues that it believes are often overlooked or

22  ignored due to the dominance of liberal and left wing perspectives in higher education in the

23  United States." Compl. ¶ 33. PragerU regularly creates videos that it posts on YouTube. These

24  videos cover a wide range of political and social issues, including racism, police violence,

25  campus rape, genocide, and other political conflicts.[2] In this lawsuit, PragerU claims that several

26

27          [2] For example, in a PragerU video entitled "Born to Hate Jews" the narrator discusses how he
    used to think Jews in Israel were engaged in genocide and violence against Muslims. *See* Compl.

28  ¶ 72 (citing https://www.youtube.com/watch?v=xCQEmeGfFmY). Another video entitled "Why
    (continued...)

dozen of its videos are currently unavailable in Restricted Mode, demonetized, or both. *Id.* ¶ 65; *see also id.* ¶ 12. Although PragerU does not allege that it has appealed the demonetization of any videos, PragerU alleges that it has, since August 2016, participated in YouTube's Restricted Mode feedback process to appeal designations of its videos as "potentially mature." *Id.* ¶¶ 53-66. Plaintiff alleges that YouTube responded to each of its requests. *See id.*

Scattered throughout the Complaint are allegations that YouTube's designation of PragerU's videos as "age-restricted" or "potentially mature" was "arbitrary," "capricious," "discriminatory," and/or "pretextual." *E.g.*, Compl. ¶¶ 1, 6, 13, 52, 67. Plaintiff offers only four alleged "facts" in support of these conclusions. *First*, PragerU alleges that YouTube's policies are "vague, overbroad, and subjective … to justify their censorship decisions." *Id.* ¶ 5. *Second*, PragerU alleges that YouTube's responses to PragerU's requests to remove content restrictions likewise have been "vague, misleading, confusing, and often contradictory." *Id.* ¶ 53. *Third*, PragerU lists a handful of its videos that it claims were restricted by YouTube, and which it alleges were then reposted by other users but not restricted. *Id.* ¶ 70. *Fourth*, PragerU introduces the results of an allegedly "extensive comparative analysis of its videos that were restricted and those on similar topics by different speakers that were not." *Id.* ¶ 72. While the methods and criteria used to conduct this analysis are nowhere alleged, PragerU alleges that its videos have been treated differently than other videos on "similar topics" posted by third parties. *Id.* ¶ 72.

Based on these allegations, PragerU seeks injunctive relief and monetary damages against Google/YouTube based on seven causes of action, which are discussed in detail below.

## LEGAL STANDARD

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

---

(...continued from previous page)

isn't Communism as hated as Nazism?" describes mass murders and other atrocities in Communist countries. *See id.* (citing https://www.youtube.com/watch?time_continue=1&v=n UGkKKAogDs*)*.

1   liability, it stops short of the line between possibility and plausibility of entitlement to relief."

2   *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 886 (N.D. Cal. 2011) (Koh, J.). Courts are

3   "not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of

4   fact, or unreasonable inferences.'" *Sepehry-Fard v. MB Fin. Servs.*, 2014 U.S. Dist. LEXIS

5   71568, at *4 (N.D. Cal. May 23, 2014) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

6   1055 (9th Cir. 2008)). Nor is a court required "to assume the truth of legal conclusions merely

7   because they are cast in the form of factual allegations." *Eidson v. Medtronic, Inc.*, 40 F. Supp.

8   3d 1202, 1212 (N.D. Cal. 2014) (Koh, J.).

9                                   **ARGUMENT**

10          Plaintiff's case runs headlong into three key immunities that bar any claim against

11   Google based on its efforts to give its users better control over the content they see on YouTube.

12   And even apart from these immunities, Plaintiff's claims fail on their own terms.

13   **I.      GOOGLE IS PROTECTED FROM PLAINTIFF'S CLAIMS BY SECTION 230**

14          Congress enacted Section 230 of the CDA to "encourage the development of

15   technologies which maximize user control over what information is received by individuals,

16   families, and schools who use the Internet" and to "remove disincentives for the development

17   and utilization of blocking and filtering technologies." 47 U.S.C. § 230(b)(3), (4). As the Ninth

18   Circuit has explained, Section 230 recognizes that "parents best can control the material accessed

19   by their children with the cooperation and assistance of [internet services]" and that "[s]ome

20   blocking and filtering programs depend on the cooperation of website operators and access

21   providers who label material that appears on their services." *Batzel v. Smith*, 333 F.3d 1018,

22   1028-29 (9th Cir. 2003). To that end, the statute includes two distinct immunities for online

23   service providers, which independently bar Plaintiff's claims in this case (other than its claim for

24   violation of the U.S. Constitution, which is precluded by Google's own First Amendment rights

25   and fails on its own terms).

26

27

28

### A.      Google Is Immune Under Section 230(c)(1)

Section 230(c)(1) prohibits any claim that would treat the provider of an "interactive computer service"[3] "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As the Ninth Circuit has explained, this provision, "by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes*, 570 F.3d at 1105. In essence, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008); *accord Zeran v. Am. Online*, 129 F.3d 327, 331(4th Cir. 1997) (Section "230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

This protection gives online services broad protection from liability for the decisions they make about how to manage third-party content on their platforms, including determining whether and under what conditions such content should be displayed to users. Courts, including this one, have repeatedly held that Section 230(c)(1) bars claims based on a service provider's decisions to remove or otherwise restrict access to other people's content. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (Koh, J.) (holding that Facebook's blocking of plaintiff's page is "publisher conduct immunized by the CDA"); *Lancaster v. Alphabet Inc.*, 2016 U.S. Dist. LEXIS 88908, at *7-8 (N.D. Cal. July 8, 2016) (dismissing claims based on YouTube's removal of plaintiff's videos because "to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher").

Section 230(c)(1) also extends to other "traditional editorial functions," *Zeran*, 129 F.3d at 330, including selecting ads to run with user-submitted content, filtering user content, and applying age-verification rules. *Gonzalez,* 2017 U.S. Dist. LEXIS 175327, at *41 (Section

---

[3] It is well established that YouTube and Google qualify as interactive computer services, as they "provide[] or enable[] computer access by multiple users to a computer service" as required by § 230. 47 U.S.C. § 230(f)(2) (defining interactive computer service); *see also, e.g., Gonzalez v. Google LLC*, 2017 U.S. Dist. LEXIS 175327, at *27 (N.D. Cal. Oct. 23, 2017); *Lancaster v. Alphabet Inc.*, 2016 U.S. Dist. LEXIS 88908, at *7 (N.D. Cal. July 8, 2016).

1   230(c)(1) bars claims based on "Google's provision of neutral tools, including targeted

2   advertising[.]"); *Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481, 485 (4th Cir. 2015) ("Yelp

3   has an automated system that filters reviews. Such activities constitute traditional editorial

4   functions that do not render Yelp an information content provider."); *Doe v. MySpace Inc.*, 528

5   F.3d 413, 420 (5th Cir. 2008) (service provider immune from claim based on failure to

6   effectively implement age verification policies).

7         Plaintiff's claims seek to do exactly what Section 230(c)(1) forbids: impose liability on

8   YouTube as a publisher of Plaintiff's videos. Plaintiff primarily takes issue with YouTube's

9   decisions to exclude certain PragerU videos from being displayed in Restricted Mode (*e.g.*,

10  Compl. ¶¶ 42-45, 57); in passing, Plaintiff also challenges YouTube's decisions not to allow ads

11  to be displayed alongside certain other PragerU videos (*e.g.*, Compl. ¶ 67). These are

12  quintessentially decisions about "whether to publish or to withdraw from publication third-party

13  content." *Sikhs for Justice*, 144 F. Supp. 3d at 1094; *accord Barnes*, 570 F.3d at 1102

14  ("publication involves reviewing, editing, and deciding whether to publish or to withdraw from

15  publication third-party content"). YouTube's choices about whether to classify videos as

16  "mature" or otherwise sensitive, and whether ads should be displayed alongside a given video,

17  all fall squarely within the functions protected under Section 230. *See Zeran*, 129 F.3d at 330;

18  *Batzel*, 333 F.3d at 1028-29. Plaintiff's effort to hold YouTube liable for making those decisions

19  is categorically forbidden by Section 230(c)(1).

20      **B.**      **Google Is Immune Under Section 230(c)(2)(B)**

21        While this Court need not go beyond Section 230(c)(1) to resolve nearly all of Plaintiff's

22  claims in this case, Google is independently protected by a separate provision of the CDA.

23  Section 230(c)(2)(B) bars claims against interactive computer service providers for "any action

24  taken to enable or make available to information content providers or others the technical means

25  to restrict access to material described in paragraph (1)."[4] 47 U.S.C. § 230(c)(2)(B). Under this

26

27      [4] Although the statute refers back to paragraph (1), that is likely a typographical error, and

28  courts have interpreted it to refer instead to paragraph (A), which covers "material that the
    provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing,

(continued...)

1  provision, a service provider that provides "tools that filter, screen, allow, or disallow content

2  that the provider or user considers obscene, lewd, lascivious, filthy, excessively violent,

3  harassing, or otherwise objectionable may not be held liable for any action taken to make

4  available the technical means to restrict access to that material." *Zango*, 568 F.3d at 1173.

5      Section 230(c)(2)(B) squarely applies to tools like YouTube's Restricted Mode. In

6  *Zango*, for example, the Ninth Circuit held that Section 230(c)(2)(B) barred claims based on a

7  service provider offering filtering tools for users to prevent malware from being installed on their

8  computers. *Id*. at 1174. The immunity applied even though it was the defendant, not the end

9  users, who decided which programs to block. *Id*. at 1176. The Ninth Circuit explained that it was

10  enough that the defendant "'made available' for its users the technical means to restrict access to

11  items that [it] has defined as malware." *Id*.; *accord* 47 U.S.C. § 230(c)(2)(A) (relevant material is

12  that which "the provider or user considers to be" objectionable).

13      Very recently, Judge Davila similarly rejected a plaintiff's attempt to bring claims against

14  a service provider that developed "software that protects internet users from malware, adware,

15  and other unwanted computer programs." *Enigma Software Grp. USA LLC v. Malwarebytes Inc.*,

16  2017 U.S. Dist. LEXIS 184658, at *2 (N.D. Cal. Nov. 7, 2017). The plaintiff asserted that

17  defendant had classified plaintiff's software improperly, categorizing it as malware for anti-

18  competitive reasons rather than based on the character of the software. *Id*. at *2. Judge Davila

19  held that such claims were barred by Section 230(c)(2)(B), as they sprung from the defendant's

20  efforts to provide others with the technical means to filter content. *Id*. at *5-7, 10.

21      For the same reasons, Section 230(c)(2)(B) protects Google here. Like the filtering tools

22  at issue in *Zango* and *Enigma*, YouTube's Restricted Mode is a tool that provides users with the

23  "technical means" to limit their exposure to potentially harmful or inappropriate material.

24  Compl. ¶ 42 ("[T]he Guidelines ensure that videos containing potentially mature content will not

25  be shown to viewers who have Restricted Mode turned on."). Restricted Mode is a paradigmatic

26  

27      (...continued from previous page)
    or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568
28  F.3d 1169, 1173 n.5 (9th Cir. 2009).

1    example of what Congress sought to protect through Section 230(c): a "blocking and filtering

2    program" that "depend[s] on the cooperation of website operators and access providers who label

3    material that appears on their services." *Batzel*, 333 F.3d at 1028-29 & n.13; *accord* 47 U.S.C. §

4    230(b)(3)-(4).

5            Videos that users are able to avoid by using Restricted Mode are ones that YouTube has

6    determined may be "potentially mature"—a category that includes material featuring "detailed

7    conversations about or depictions of sex," "graphic descriptions of violence," "details about

8    events related to terrorism, war, crime, and political conflicts," "profane and mature language,"

9    or "content that is gratuitously incendiary, inflammatory, or demeaning towards an individual or

10   group" (*see* Compl. ¶ 42; Willen Decl., Ex. 3)—in short, materials that YouTube "or user[s]

11   consider[] to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise

12   objectionable." 47 U.S.C. § 230(c)(2)(A). The statute allows YouTube (and its users) to

13   determine for themselves what kind of material may be inappropriate for minors and other

14   sensitive viewers and to limit the content available in Restricted Mode accordingly. *See*

15   *e360insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 608 (N.D. Ill. 2008). Plaintiff

16   acknowledges that YouTube made such determinations here. Compl. ¶ 45. ("Google/YouTube

17   also admit that, on some occasions, a video may not violate the Community Guidelines but may

18   still be subject to restricted mode filtering because Google/YouTube subjectively deems the

19   content not to be appropriate for everyone."). Nothing more is required. By its terms, Section

20   230(c)(2)(B) bars any claim that seeks to hold Google liable for making such a tool available to

21   users. That is exactly what Plaintiff's claims would do.

22           Plaintiff cannot avoid that result by pointing to its allegations that Google's decisions

23   regarding PragerU videos were arbitrary or motivated by political disagreement or bias. As Judge

24   Davila explained, Section 230(c)(2)(B) "has no good faith language," so courts applying this

25   immunity "need not consider whether [defendant] acted in good faith." *Enigma Software Grp.*,

26   2017 U.S. Dist. LEXIS 184658, at *7-8. Because there is no question that YouTube determined

27   that PragerU's videos would be objectionable to the kinds of sensitive users who opt into

28

1    Restricted Mode, Plaintiff's unsubstantiated (and baseless) allegations of bias and improper

2    motive are irrelevant. Google is protected by Section 230(c)(2)(B) either way.

3    **II.      GOOGLE IS PROTECTED BY THE FIRST AMENDMENT**

4            Even apart from Section 230, the First Amendment protects Google against the claims

5    that Plaintiff advances in this case. While Plaintiff's Complaint invokes the First Amendment, it

6    seeks to invert the protections that it provides. Rather than allowing PragerU to compel a private

7    party like YouTube to make certain videos available to all users, the First Amendment gives

8    YouTube the freedom to decide whether and how to present content on its service. Applied here,

9    the First Amendment protects Google from liability for the decisions it is alleged to have made to

10   classify certain PragerU videos as unavailable in Restricted Mode or as ineligible to have

11   advertisements run next to them on YouTube.

12           It is well settled that "the exercise of editorial control and judgment" by those who

13   publish third party content is activity covered by the First Amendment. *Miami Herald Pub. Co.,*

14   *Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974); *see also Los Angeles v.*

15   *Preferred Comms., Inc.,* 476 U.S. 488, 494 (1986) (First Amendment protects decisions about

16   selecting and presenting video content). This broad First Amendment protection for a publisher's

17   editorial judgments encompasses the choice of how to present, or even whether to present,

18   particular content. *See Tornillo*, 418 U.S. at 258; *Turner Broad. v. FCC,* 512 U.S. 622, 636-37

19   (by "'exercising editorial discretion over which stations or programs to include in its repertoire,'

20   cable programmers and operators 'see[k] to communicate messages on a wide variety of topics

21   and in a wide variety of formats'") (quoting *Preferred Communications,* 476 U. S. at 494). This

22   protection also extends to the choice of what advertisements to run and how to run them. *See,*

23   *e.g.*, *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir. 1971).

24           These protections fully apply to online service providers, which have the First

25   Amendment right to decide how best to select, arrange, and display third-party content on their

26   private services. That is why, for example, search engines have been consistently immunized

27   from liability for their decisions not to include certain websites in search results. *See Zhang v.*

28   *Baidu.com, Inc.,* 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (First Amendment barred claims

1  against search engine for excluding from its search results information about certain political

2  topics); *e-ventures, Worldwide, LLC v. Google, Inc.*, 2017 U.S. Dist. LEXIS 88650, at *11-12

3  (M.D. Fla. 2017) (First Amendment barred tort claims against Google for excluding plaintiffs'

4  websites from search results). The same is true for a search engine's decision not to run

5  particular advertisements. *See Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del.

6  2007) (First Amendment protected search engines against attempt to force them to "place

7  Plaintiff's ads for his websites in prominent places on their search engine results").

8      Plaintiff's claims here run headlong into these established First Amendment protections.

9  PragerU seeks to hold Google liable for making certain of its videos unavailable to users who

10  have opted into Restricted Mode and for declining to allow ads to run in conjunction with some

11  of those videos on YouTube. Google's decisions in this regard are classic examples of judgments

12  covered by the First Amendment. They involve choices about whether particular content is

13  appropriate for a group of users who have chosen an "intentionally limited YouTube experience"

14  (Willen Decl. Ex. 3) and how such content should be displayed (including whether it should

15  appear with or without advertising). These decisions are akin to those of the motion picture

16  association issuing an "R" rating, or cable operators deciding whether and at what time certain

17  programming should air, or newspapers deciding whether and where ads should appear in their

18  pages. Within the YouTube service, the First Amendment reserves the right to make those

19  judgments to Google. *See, e.g.*, *Med. Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 825 (9th

20  Cir. 2002) ("The decision not to include information about the true range of error in the industry

21  was an editorial decision protected by the First Amendment."); *Assocs. & Aldrich*, 440 F.2d at

22  135-36 (First Amendment protected newspaper's editorial decisions about whether to run

23  advertisements and what content to include in them). And, while Plaintiff's claims about

24  YouTube's motives are unfounded, this protection applies regardless of whether Google's

25  judgments "are fair or unfair, or motivated by profit or altruism." *e-ventures*, 2017 U.S. Dist.

26  LEXIS 88650, at *11-12.

27      Simply put, the First Amendment does not allow Plaintiff to force Google to display

28  PragerU's videos to all YouTube users or to display ads next to those videos. To hold otherwise

1   would impermissibly "compel [Google] to speak in a manner deemed appropriate by Plaintiff

2   and would prevent Google from speaking in ways that Plaintiff dislikes." *Langdon*, 474 F. Supp.

3   2d at 629.

4   **III.      PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION**

5           While the broad immunities provided by the CDA and the First Amendment are

6   sufficient to dispose of this case, Plaintiff's Complaint also fails to state a claim upon which

7   relief can be granted. Under Rule 12(b)(6), each of Plaintiff's causes of action can be dismissed

8   on its own terms.

9           **A.      Plaintiff Cannot Assert Claims Under The Federal or California Constitutions**

10          Plaintiff starts with a surprising constitutional claim: that Google violated PragerU's free

11  speech rights under the U.S. and California constitutions when it determined that some of

12  PragerU's videos should be unavailable to users who employed Restricted Mode. As discussed

13  above, this claim actually inverts the relevant constitutional protections in this case—it is

14  YouTube whose First Amendment rights are at stake. But even beyond that, Plaintiff's

15  invocation of the constitutions is misplaced.

16          1.      Because YouTube Is Not a State Actor, Plaintiff's Claims Fail

17          "It is, of course, a commonplace that the constitutional guarantee of free speech is a

18  guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S.

19  507, 513 (1976); *see also Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 567 (1972) ("[I]t must be

20  remembered that the First and Fourteenth Amendments safeguard the rights of free speech and

21  assembly by limitations on state action, not on action by the owner of private property used

22  nondiscriminatorily for private purposes only."); *accord United Bhd. of Carpenters & Joiners,*

23  *Local 610 v. Scott*, 463 U.S. 825, 833 (1983) ("a conspiracy to violate First Amendment rights is

24  not made out without proof of state involvement."). The First Amendment does not regulate

25  private parties, including online service providers. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208

26  F.3d 741, 754 (9th Cir. 2000); *Langdon*, 474 F. Supp. 2d at 631-32.

27          The same is true of article I, section 2 of the California Constitution. *See Golden*

28  *Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1027-28 (2001) ("Based on

1    the historical evidence suggesting that the framers of California's free speech clause intended to

2    protect against governmental—and not private—encroachments, and the absence of any

3    evidence to the contrary, we see no grounds for reaching a different conclusion."). Plaintiff's

4    constitutional claims founder on this bedrock principle. YouTube is a private company operating

5    a private service. It is not a state actor and is not subject to the U.S. or California constitutions.

6       Plaintiff apparently seeks to evade this rule by characterizing YouTube as some kind of

7    public entity that is sufficiently important for speech that the First Amendment should somehow

8    apply to limit Google's control over how and what YouTube users can say. *See, e.g.*, Compl. ¶

9    31. This argument is meritless, and has repeatedly been rejected in similar cases. Just last month,

10   another district court ruled that a First Amendment claim against Facebook (for allegedly

11   blocking plaintiff from sharing content) failed "as a matter of law because Plaintiff fails to allege

12   that [Facebook is a] state actor[]." *Shulman v. Facebook*, 2017 U.S. Dist. LEXIS 183110, at *8-

13   10 (D.N.J. Nov. 6, 2017) (compiling authorities).

14      Indeed, the Ninth Circuit spoke directly to this issue in *Howard*: "Plaintiffs counter that

15   AOL is a 'quasi-public utility' that 'involves a public trust.' This claim is insufficient to hold that

16   AOL is an 'instrument or agent' of the government." 208 F.3d at 754; *accord PruneYard*

17   *Shopping Ctr. v. Robins,* 447 U.S. 74, 81 (1980) ("when a shopping center owner opens his

18   private property to the public for the purpose of shopping, the First Amendment to the United

19   States Constitution does not thereby create individual rights in expression beyond those already

20   existing under applicable law"); *see also Langdon*, 474 F. Supp. 2d at 622, 631-32 ("Plaintiff's

21   analogy of Defendants' private networks to shopping centers and his position that since they are

22   open to the public they become public forums is not supported by case law."). So too here,

23   Plaintiff cannot evade the state-action requirement by analogizing YouTube to a public entity.

24              2.      The *Pruneyard* Exception Does Not Apply Here

25      In connection with its claim under the California Constitution, Plaintiff invokes a narrow

26   exception to the state-actor rule, but this exception does not apply here.

27      In *Robins v. Pruneyard Shopping Ctr.*, the California Supreme Court extended

28   California's free speech guarantee to a privately-owned shopping center. 23 Cal. 3d 899, 908

1    (1979). In reaching this decision, the Court explained that its holding did not give "free rein" for

2    the public's right to speech, but was based on the fact that the defendant's property functioned as

3    a modern-day town square, or as the essential public forum of the community. *Id.* at 910 n.5.

4         *Pruneyard* was a limited decision when it was issued, and it has been limited even further

5    over time. Later cases "narrowed the *Pruneyard* rule to apply only to *common areas* of the

6    shopping center." *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App.

7    4th 1171, 1183 (2014) (emphasis added) (citing *Ralphs Grocery Co. v. United Food &*

8    *Commercial Workers Union Local 8,* 55 Cal. 4th 1083, 1092 (2012)). These developments make

9    clear that *Pruneyard* does not apply even to all shopping centers, much less to all businesses that

10   are freely accessible to the public. Rather, "to be a public forum under our state Constitution's

11   liberty of speech provision, an area within a shopping center must be designed and furnished in a

12   way that induces shoppers to congregate for purposes of entertainment, relaxation, or

13   conversation." *Ralphs Grocery,* 55 Cal. 4th at 1092-93. Indeed, the California Supreme Court

14   has *never* extended the *Pruneyard* doctrine outside the context of a shopping mall's common

15   areas. *Cf. Fashion Valley Mall, LLC v. National Labor Relations Bd.*, 42 Cal. 4th 850 (2007).

16        Plaintiff's request to dramatically expand *Pruneyard* to cover YouTube (and presumably

17   many other similar online services) should be rejected. "No court has expressly extended

18   *Pruneyard* to the Internet generally." *hiQ Labs Inc. v. LinkedIn Corp.*, 2017 U.S. Dist. LEXIS

19   129088, at *31 (N.D. Cal. Aug. 14, 2017). Judge Chen recently rejected a similar argument,

20   explaining that the principles underlying *Pruneyard* do not carry over to this realm: "there are a

21   host of potential 'slippery slope' problems that are likely to surface were *Pruneyard* to apply to

22   the Internet." *Id*. at *32; *see also Kinderstart.com LLC v. Google Inc.*, 2007 U.S. Dist. LEXIS

23   22637, at *52 (N.D. Cal. Mar. 16, 2007) (dismissing alleged violation of California constitution

24   and holding that the widespread availability and accessibility of a website does not, without

25   more, transform the website into "the 'functional equivalent of a traditional public forum'").

26        The unprecedented expansion of *Pruneyard* that Plaintiff seeks is not merely bad law. If

27   YouTube and other leading online services were subject to the same constraints under the

28   California Constitution as the government—and were similarly limited in their ability to regulate

1    their users' speech—the practical consequences would be profound. Such a ruling would cast

2    doubt on a whole host of content-based regulations that YouTube and other private platforms

3    routinely use to keep their services free of objectionable or offensive content—including

4    pornography, hate speech, and graphic violence. *See* Willen Decl., Ex. 2; *see also* Compl. ¶ 44.

5    That would be directly contrary to Congressional policy, which is designed to encourage exactly

6    such self-regulation, and inconsistent with the public interest, which benefits from the creation of

7    online spaces that families and others can use without having to expose themselves to material

8    they would rather avoid. *See* § 230(b)(3)-(4); *see also hiQ*, 2017 U.S. Dist. LEXIS 129088. at

9    *32; *Batzel*, 333 F.3d at 1028-29.

10        Plaintiffs' effort to stretch *Pruneyard* to cover YouTube should be rejected, and

11    Plaintiff's claim under the California Constitution should be dismissed.

12        **B.**      **Plaintiff's Unruh Act Claim Fails**

13        Plaintiff next alleges that Google violated California's Unruh Act by discriminating

14    against Plaintiff on the basis of Plaintiff's political identity and viewpoint. Compl. ¶ 97. This

15    claim fails as a matter of law on multiple grounds.

16        As an initial matter, the Unruh Act may not be applied absent a compelling interest "to

17    apply the Act in the face of defendant's First Amendment rights." *Ingels v. Westwood One*

18    *Broad. Services, Inc.*, 129 Cal. App. 4th 1050, 1074 (2005); *see also Hart v. Cult Awareness*

19    *Network*, 13 Cal. App. 4th 777, 791–93 (1993). Because Plaintiff's Unruh Act claim challenges

20    Google's constitutionally protected decisions (*supra* Section II), the claim is subject to rigorous

21    scrutiny—a showing Plaintiffs do not even attempt to meet. *Ingels*, 129 Cal. App. 4th at 1074.[5]

22        Moreover, in a case like this, which involves a claim of discrimination under the Unruh

23    Act not linked to a claim under the federal Americans with Disabilities Act, a plaintiff must

24

25        [5] For similar reasons, the Unruh Act also may not be applied to challenge alleged

26    discrimination that is reasonable, or based on a legitimate business interest or public policy. *See Javorsky v. Western Athletic Clubs, Inc.*, 242 Cal. App. 4th 1386, 1394-95 (2015). Here, as

27    discussed, Section 230 of the CDA specifically encourages Google's efforts to filter potentially mature content from younger or more sensitive viewers—underscoring the reasonableness and

28    benefit of those efforts. *See Sargoy v. Resolution Trust Corp.*, 8 Cal. App. 4th 1039, 1046 (1992).

1   "'plead and prove *intentional* discrimination.'" *Greater L.A. Agency of Deafness Inc. v. CNN*

2   *Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (emphasis added) (quoting *Munson v. Del Taco Inc.*, 46

3   Cal. 4th 661 (2009)). "The California Supreme Court has clarified that the Unruh Act

4   contemplates *'willful, affirmative* misconduct on the part of those who violate the Act' and that a

5   plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral

6   policy." *Id.* (emphasis added) (citing *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824,

7   853-54 (2005)); *see also Smith v. Pride Mobility Prods. Corp.*, 2017 U.S. Dist. LEXIS 20195, at

8   *10-15 (N.D. Cal. Feb. 12, 2017) (Koh, J.) (dismissing Unruh Act claim for failure to allege that

9   defendant intentionally discriminated against plaintiff or that plaintiff's protected status "was a

10  motivating factor" for the alleged discrimination).

11      Other than threadbare conclusions of discriminatory bias against Plaintiff, which do not

12  suffice, the only facts that Plaintiff alleges in support of its claim of discrimination are based on

13  the purportedly disparate impact on Plaintiff of YouTube's facially neutral terms. Compl. ¶¶ 70,

14  72 (alleging that Plaintiff's videos are treated differently than the same videos uploaded by other

15  users and differently than videos on similar topics uploaded by other users); *see also id.* ¶¶ 36,

16  44, 54 (alleging facially-neutral terms and guidelines). There is nothing in the Complaint that

17  plausibly suggests that YouTube *intentionally* discriminated against PragerU on the basis of its

18  political identity. That defeats any Unruh Act claim here.

19      **C.    Plaintiff's UCL Claim Fails**

20      Plaintiff next invokes the Unfair Competition Law (UCL), which prohibits "unlawful,

21  unfair, or fraudulent business acts or practices." Cal. Bus. & Prof. Code § 17200. As an initial

22  matter, Plaintiff cannot state a claim under the UCL because the claim is premised on conduct by

23  YouTube that is expressly encouraged by Section 230 and thus covered by the UCL's "safe

24  harbor," which makes clear that if the legislature "has permitted certain conduct or considered a

25  situation and concluded no action should lie, courts may not override that determination." *Cel-*

26  *Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 185  (1999); *see also Lopez v.*

27  *Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 592 (2011). Because Plaintiff's claim is premised on

28  legislatively authorized conduct, Plaintiff's claim must be dismissed.

Beyond that, Plaintiff's UCL claim also fails on the merits. While it is not clear which of the three prongs PragerU actually seeks to rely on, it cannot state a viable claim under any of them. *First*, Plaintiff cannot sustain an "unlawful" UCL claim because the Complaint (for reasons discussed elsewhere in this motion) does not state a claim against Google for any predicate unlawful act. *See Oracle Am., Inc. v. Cedarcrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D. Cal. 2013) (section 17200 claim failed because underlying antitrust claim dismissed).

*Second*, any claim under the "fraudulent" prong fails because Plaintiff does not even identify any supposedly false or misleading statements by Google about the practices at issue—much less with the particularity required by Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiff also fails to allege its "own actual and reasonable reliance on … [any] allegedly untrue or misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014).

*Third*, in a case like this, where the "crux" of a plaintiff's claim is an allegation that defendant's "conduct unfairly injures [one's] economic interests to the benefit of other businesses who choose to [use defendant's services]," *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014), a claim under the UCL's "unfair" prong requires facts showing "actual or threatened impact on competition." *Cel-Tech Comms.*, 20 Cal. 4th at 186-87. Under this standard, individualized injury suffered by a lone plaintiff is not enough to state a claim. *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 501 (2011). The Complaint does not meet this test: it is based entirely on the premise that PragerU (and PragerU alone) has suffered "lost income, reduced viewership, and damage to brand, reputation, and goodwill." Compl. ¶ 8, 14, 70-72, 106. There are no allegations that Google's alleged actions had any broader impact on competition. Without that, there can be no unfairness claim. *E.g., Levitt*, 765 F.3d at 1136-37.[6]

---

[6] Because this is not a consumer case, the alternative "balancing" test for unfairness that is sometimes used in evaluating UCL unfairness claims does not apply. But even if it did, Plaintiff has failed to allege facts showing that YouTube's conduct in attempting to shield its most sensitive users from content that it has determined to be "mature" or to avoid monetization of certain types of content is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006).

(continued…)

### D.    Plaintiff Fails To State A Claim For Breach Of Implied Covenant

Plaintiff's invocation of the implied covenant of good faith and fair dealing is equally flawed because the actions Plaintiff complains of—the exclusion of certain of its videos from Restricted Mode and the removal of advertising from other videos (Compl. ¶¶ 109-113)—were expressly authorized by YouTube's terms.

"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988). Accordingly, where action taken by a defendant is "expressly authorized" by the contract, there can be no breach of the implied covenant. *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* 100 Cal. App. 4th 44, 56-57 (2002); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.* 2 Cal. 4th 342, 374 (1992) ("As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct."). That is so even where the defendant allegedly acted with an improper motive. *Damabeh v. 7-Eleven, Inc.,* 2013 U.S. Dist. LEXIS 66565, at *15-16 & n.4 (N.D. Cal. May 8, 2013) (Koh, J.) (dismissing implied covenant claim based on allegedly malicious termination of franchise agreement). Put simply, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 349-50 (2000).

This principle defeats Plaintiff's invocation of the implied covenant in this case. In targeting the actions YouTube took in regard to PragerU's videos, Plaintiff seeks to enforce purported contractual rights that contradict the express provisions of the parties' agreements. First, with respect to Restricted Mode, under the Terms of Service, YouTube expressly "reserves the right to remove Content." Willen Decl., Ex. 1. This includes not only the right to remove

---

(...continued from previous page)

Nor has Plaintiff pleaded facts showing that the "the utility of [YouTube's] conduct" is outweighed by "the harm to the alleged victim." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

1   videos altogether from the service or from a given location (*see Song fi v. Google Inc.*, 108 F.

2   Supp. 3d 876, 885 (N.D. Cal. 2015)), but also the lesser-included authority to remove videos

3   from being available in Restricted Mode. That is confirmed by the Community Guidelines,

4   which are expressly incorporated into YouTube's Terms of Service, as well as associated

5   policies, which put users on clear notice that YouTube may restrict access to videos involving

6   various kinds of mature topics. *E.g.* Compl. ¶¶ 42-45; Willen Decl. Exs. 2, 3, 4 & 5.  Likewise,

7   with respect to advertising, YouTube's monetization Terms of Service and associated policies

8   provide that YouTube reserves "the right to refuse or limit your access to [AdSense] Services,"

9   including "the right, at its discretion, to not show ads on videos and watch pages." Willen Decl.

10   Exs. 9 & 8; Compl. ¶¶ 66, 67, 81.

11       Because these contractual provisions specifically authorized Google to take the kinds of

12   actions in regard to PragerU's videos at issue here, Plaintiff cannot invoke the implied covenant.

13   *E.g., Song fi*, 108 F. Supp. 2d at 885 ("Plaintiffs cannot state a claim for breach of the implied

14   covenant of good faith and fair dealing, because 'if defendants were given the right to do what

15   they did by the express provisions of the contract there can be no breach.'"). To do so would be

16   to rewrite the parties' agreements, not to enforce them. *Travelers Cas. & Sur. Co. of Am. v.*

17   *Highland P'ship*, 2012 U.S. Dist. LEXIS 167458, at *25 (S.D. Cal. Nov. 26, 2012).

18        Moreover, insofar as Plaintiff is seeking damages for its breach of implied covenant

19   claim, that claim is barred by the limitation of liability provision in Section 10 of the YouTube

20   Terms of Use. *See* Willen Decl., Ex. 1 ("In no event shall YouTube ... be liable to you for any …

21   damages whatsoever resulting from any … errors or omissions in any content."). Courts,

22   including the California Court of Appeal, have repeatedly applied this provision to dismiss

23   implied-covenant claims arising from YouTube's efforts to enforce its terms against videos

24   posted on the service. *See Darnaa LLC v. Google, Inc.*, 236 F. Supp. 3d 1116, 1126 (N.D. Cal.

25   2017); *Lewis v. YouTub*e, 244 Cal. App. 4th 118, 126 (2015). Plaintiff's claim for damages here

26   fails for similar reasons.

27

28

### E.      Plaintiff's Lanham Act Claim Fails

Finally, Plaintiff's invocation of the federal Lanham Act, 15 U.S.C. § 1125(a), fails. As a threshold matter, Lanham Act claims are consistently limited where, as here, the defendant's alleged conduct is protected by the First Amendment. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 494 (2d Cir. 1989). The claim also fails on its terms. Section 1125(a) only applies to two types of claims: (1) false association (§ 1125(a)(1)(A)), and (2) false advertising under § 1125(a)(1)(B). *See Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1384 (2014). Although Plaintiff does not identify under which prong it brings its claim, it cannot state a claim under either one.

A claim for false association requires a false or misleading description or representation of fact that "is likely to cause confusion, or to cause mistake, or to deceive *as to the affiliation, connection, or association of such person with another person*, or as to the *origin, sponsorship, or approval* of his or her goods, services, or commercial activities *by another person*." 15 U.S.C. § 1125(a)(1)(A) (emphases added). Plaintiff's Complaint contains nothing of the sort: Plaintiff makes no allegations whatsoever that YouTube is somehow associating itself with PragerU or misleadingly trying to imply some connection between the two companies. Any claim under this provision fails as a matter of law.

As for false advertising, any claim fails out of the gate because Plaintiff fails to adequately identify any purportedly false statements, and certainly not with the particularity required by Rule 9(b). *See Transfresh Corp. v. Ganzerla & Assoc.*, 862 F. Supp. 2d 1009, 1017-18 (N.D. Cal. 2012) (Rule 9(b) applies where false advertising claim sounds in fraud). The Complaint does not point to a single statement that YouTube made about Plaintiff's goods or services, much less a false one. Plaintiff vaguely claims that YouTube "suggest[s]" negative things about PragerU, Compl. ¶ 116, but this is a far cry from the particularity required to state a claim. The same is true with respect to Plaintiff's bald assertion that YouTube misrepresents itself as "an equal and diverse public forum." *Id.* ¶ 117. Moreover, YouTube's representations about the nature of its services are also informed by YouTube's Terms and Community

1    Guidelines, which, as described above, clearly disclose that YouTube may sometimes remove or

2    restrict access to certain content.

3         Even if the Complaint could specifically identify a false statement, Plaintiff still fails to

4    plausibly allege that any statements were made "for the purpose of influencing consumers to buy

5    defendant's goods or services," as required by Section 1125(a)(1)(B). *Darnaa, LLC v. Google,*

6    *Inc.*, 2015 U.S. Dist. LEXIS 161791, at \*24 (N.D. Cal. Dec. 2, 2015); *Newcal Indus. v. Ikon*

7    *Office Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008). Plaintiff makes no such allegation. General

8    references to YouTube's policies and guidelines are not enough. *See Darnaa,* 2015 U.S. Dist.

9    LEXIS 161791, at \*25 (dismissing Lanham Act claim where plaintiff failed to "allege a

10   promotional purpose" for statements at issue).

11        Finally, Plaintiff cannot "show economic or reputational injury flowing directly from the

12   deception wrought by the defendant's advertising." *Lexmark,* 134 S. Ct. at 1391. While Plaintiff

13   claims that YouTube's *actions* (*i.e.*, its decision to exclude PragerU's video from Restricted

14   Mode and to prevent advertising on some of videos) caused it to lose revenue (Compl. ¶ 118),

15   the Complaint does not allege that such purported harm flowed from YouTube's *statements*. For

16   this reason as well, its Lanham Act claim fails. *See, e.g.*, *Oracle Am., Inc. v. Terix Comput. Co.*,

17   2014 U.S. Dist. LEXIS 158060, at \*39 (N.D. Cal. Nov. 7, 2014).[7]

18                                **CONCLUSION**

19        Because Plaintiff's claims are barred by multiple federal immunities and fail on their own

20   terms to state a viable cause of action, the Complaint should be dismissed. And because any

21   amendment would be futile, the dismissal should be with prejudice. Dismissal with prejudice is

22   especially warranted because Section 230 immunity attaches "at the earliest possible stage of the

23   case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

24

25

26        [7] Because Plaintiff's claim for declaratory relief (Count VII) is predicated on its other claims
     for relief—all of which are both barred by federal law and fail on their own terms—it too must
27   be dismissed. *See, e.g.*, *Karimi v. GMAC Mortg.*, 2011 U.S. Dist. LEXIS 136071, at \*15-16
     (N.D. Cal. Nov. 28, 2011) (Koh, J.).
28

1  *See Roommates.com*, 521 F.3d at 1175 (Section 230 "protect[s] website not merely from ultimate

2  liability, but [also] from having to fight costly and protracted legal battles").

3

4  December 29, 2017                          Respectfully submitted,

5                                             WILSON SONSINI GOODRICH & ROSATI
                                              Professional Corporation
6
                                              By: */s/ Brian M. Millen*
7                                             Brian M. Willen

8                                             *Attorneys for Defendants Google LLC and
                                              YouTube, LLC.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28