1   DAVID H. KRAMER, SBN 168452                  BRIAN M. WILLEN, *admitted pro hac vice*
    MAURA L. REES, SBN 191698                    WILSON SONSINI GOODRICH & ROSATI
2   LAUREN GALLO WHITE, SBN 309075               Professional Corporation
    PETER C. HOLM, SBN 299233                    1301 Avenue of the Americas, 40th Floor
3   WILSON SONSINI GOODRICH & ROSATI             New York, NY 10019
    Professional Corporation                     Telephone: (212) 999-5800
4   650 Page Mill Road                           Facsimile:  (212) 999-5899
    Palo Alto, CA 94304-1050                     bwillen@wsgr.com
5   Telephone: (650) 493-9300
    Facsimile: (650) 565-5100
6   dkramer@wsgr.com
    mrees@wsgr.com
7   lwhite@wsgr.com
    pholm@wsgr.com
8
    Attorneys for Defendants
9   GOOGLE LLC and YOUTUBE, LLC

10                          UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

12

13  PRAGER UNIVERSITY,                    )   CASE NO.:  5:17-cv-06064-LHK
                                          )
14          Plaintiff,                    )   **DEFENDANTS' REPLY IN SUPPORT**
        v.                                )   **OF MOTION TO DISMISS**
15                                        )
    GOOGLE LLC, a Delaware corporation,   )   Date:     March 15, 2018
16  YOUTUBE, LLC, a Delaware limited      )   Time:     1:30 PM
    liability company, and DOES 1-25,     )   Dept.:    8, 4th Floor
17                                        )   Before: Hon. Lucy H. Koh
            Defendant.                    )
18                                        )
                                          )
19  _____)

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS ...........................................1

II.  SECTION 230 OF THE CDA BARS PLAINTIFF'S CLAIMS........................................4

    A.   PragerU Cannot Evade Section 230(c)(2)(B)...........................................................4

    B.   Section 230(c)(1) Bars PragerU's Claims Based On YouTube's Classification Of Certain PragerU Videos As Unavailable In Restricted Mode...........................................................................................................................7

III. PLAINTIFF STATES NO VIABLE CAUSE OF ACTION ............................................9

    A.   PragerU Cannot Save Its Constitutional Claims ....................................................9

    B.   PragerU Cannot Save Its Unruh Act Claim .........................................................11

    C.   PragerU Cannot Save Its UCL Claim ..................................................................12

    D.   PragerU Cannot Save Its Implied Covenant Claim..............................................14

    E.   PragerU Cannot Save Its Lanham Act Claim.......................................................15

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barnes v. Yahoo! Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ............................................................................8

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ............................................................................9

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,*
    481 U.S. 537 (1987) ..........................................................................................12

*Bernardo v. Planned Parenthood Fed'n of Am.,*
    115 Cal. App. 4th 322 (2004) ...........................................................................13

*Buza v. Yahoo!, Inc.,*
    2011 U.S. Dist. LEXIS 122806 (N.D. Cal. Oct. 24, 2011) ...............................11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) ............................................................................15

*Darnaa, LLC v. Google, Inc.,*
    2015 U.S. Dist. LEXIS 161791 (N.D. Cal. Dec. 2, 2015) .................................15

*Darnaa, LLC v. Google, Inc.,*
    2016 U.S. Dist. LEXIS 152126 (N.D. Cal. Nov. 2, 2016) ...................................7

*Darnaa, LLC v. Google Inc.,*
    236 F. Supp. 3d 1116 (N.D. Cal. 2017) ............................................................14

*e-ventures Worldwide, LLC v. Google, Inc.,*
    2017 U.S. Dist. LEXIS 88650 (M.D. Fla. Feb. 8, 2017) .................................2, 8

*Enigma Software Grp. USA LLC v. Malwarebytes Inc.,*
    2017 U.S. Dist. LEXIS 184658 (N.D. Cal. Nov. 7, 2017) .................................6, 7

*Fair Hous. Council v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) .......................................................................6, 8, 9

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.,*
    209 Cal. App. 4th 1118 (2012) .........................................................................14

*Greater L.A. Agency of Deafness, Inc. v. CNN, Inc.,*
    742 F.3d 414 (9th Cir. 2014) ............................................................................12

*Gonzalez v. Google LLC*, 2017 U.S. Dist. LEXIS 175327 (N.D. Cal. Oct. 23, 2017) .....................9

*hiQ Labs Inc. v. LinkedIn Corp.,*
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) .......................................................10, 11

*Howard v. AOL,*
    208 F.3d 741 (9th Cir. 2000) ............................................................................10

*Hudgens v. NLRB,*
    424 U.S. 507 (1976) ...................................................................................10

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.,*
    515 U.S. 557 (1995) ................................................................................2, 3, 4

*Ingels v. Westwood One Broad. Servs., Inc.,*
    129 Cal. App. 4th 1050 (2005) ...................................................................11

*Lancaster v. Alphabet Inc.,*
    2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016) ..............................7, 9

*Langdon v. Google, Inc.,*
    474 F. Supp. 2d 622 (D. Del. 2007) ..........................................................2, 3

*Levitt v. Yelp! Inc.,*
    765 F.3d 1123 (9th Cir. 2014) ....................................................................13

*Long v. Valentino,*
    216 Cal. App. 3d 1287 (1989) .....................................................................12

*Miami Herald Publ'g Co. v. Tornillo,*
    418 U.S. 241 (1974) ....................................................................................2, 3

*North Coast Women's Care Med. Grp., Inc. v. Superior Court,*
    44 Cal. 4th 1145 (2008) ...............................................................................12

*Pac. Gas & Electric Co. v. Pub. Utils. Comm'n,*
    475 U.S. 1 (1986) ...........................................................................................2

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007) .......................................................................9

*Pruneyard Shopping Ctr. v. Robins,*
    447 U.S. 74 (1980) ...............................................................................1, 2, 11

*Reno v. ACLU,*
    521 U.S. 844 (1997) ........................................................................................7

*Shulman v. Facebook.com,*
    2017 U.S. Dist. LEXIS 183110 (D.N.J. Nov. 6, 2017) .................................10

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
    144 F. Supp. 3d 1088 (N.D. 2015) (Koh, J.) ...........................................7, 8, 9

*Song fi Inc. v. Google, Inc.,*
    108 F. Supp. 3d 876 (N.D. Cal. 2015) .........................................................14

*U.S. W. Falun Dafa Ass'n v. Chinese Chamber of Commerce,*
    163 Cal. App. 4th 590 (2008) .......................................................................11

*Zango, Inc. v. Kaspersky Lab, Inc.,*
    568 F.3d 1169 (9th Cir. 2009) ............................................................4, 5, 6, 7

*Zhang v. Baidu.com Inc.,*
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ...............................................................3

**MISCELLANEOUS**

141 Cong. Rec. H8470 (daily ed. Aug. 4, 1995) ...............................................................................5

PragerU's Opposition ("MTD Opp.") confirms that this case is an effort to change the law, not to enforce it—a public relations campaign disguised as a lawsuit. Plaintiff's claims should be dismissed without leave to amend.

PragerU asks the Court to ignore YouTube's rights under the First Amendment and Section 230(c) of the CDA, which provide broad protections for YouTube to do exactly what it has done here: operate an important tool that helps YouTube users control their own viewing experiences. Plaintiff cannot evade those established protections by arguing (without support) that YouTube misrepresented its service as "viewpoint neutral." Even if this theory had been pleaded, general policy statements would have no effect on YouTube's constitutional and statutory rights to help users avoid content on its service.

Nor can PragerU overcome the obvious problem with its own constitutional claims: YouTube is a private publishing service, not a state actor, and, as such, its editorial decisions are *protected* by the First Amendment, not *regulated* by it, or its California equivalent. The fact that YouTube is generally committed to allowing its users to speak and express themselves—subject, of course, to rules and regulations—does not transform YouTube into the government or its service into public property. As for Plaintiff's non-constitutional claims, nothing in the opposition brief rescues PragerU from the multiple infirmities identified in YouTube's opening brief. Because PragerU's claims fail on multiple independent grounds, and because the deficiencies are at the core of its case and cannot be cured, this case should be dismissed with prejudice.

## I.   THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS

YouTube's motion to dismiss explained that the First Amendment protects online services like YouTube for the editorial decisions they make regarding third-party content on their platforms. Plaintiff has no good response.

PragerU relies primarily on the Supreme Court's decision in *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 85-86 (1980), which held that a state constitution may be applied to limit a shopping center's power to exclude pamphleteers from its property without violating the First Amendment. But *Pruneyard* is totally different from this case. There, the mall was not offering a

1    platform for speech and it was not making any sort of editorial judgments about what kind of

2    third-party speech should be allowed on its property. It was a purely commercial enterprise,

3    devoted to selling retail, not publishing other people's content. Its policy thus was a neutral rule

4    that prohibited *all* expressive activity on its property. *Id*. Indeed, in *Pruneyard*, "the owner did

5    not even allege that he objected to the content of the pamphlets; nor was the access right content

6    based." *Pac. Gas & Electric Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 12 (1986). It was on this

7    basis that the Supreme Court distinguished the case from *Miami Herald Publishing Co. v.*

8    *Tornillo*, 418 U.S. 241, 256-58 (1974), which struck down a statute requiring newspapers to

9    publish political candidates' responses to criticism. The Court explained that given Pruneyard's

10   business, the First Amendment concerns about "intrusion into the function of editors" reflected

11   in *Tornillo* "obviously are not present." *Pruneyard*, 447 U.S. at 88 (citation omitted); *accord*

12   *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 580 (1995) (in

13   *Pruneyard*, the First Amendment "principle of speaker's autonomy was simply not threatened").

14   Those concerns are front and center here. In contrast to *Pruneyard*, and like the

15   newspaper in *Tornillo*, YouTube operates a service dedicated to expressive activity. YouTube

16   enables users to publish videos and other kinds of speech, and to that end it engages in a wide

17   array of decisions regarding the kind of content that it permits, and whether and under what

18   circumstances it will display videos to a more restricted segment of YouTube users. PragerU

19   seeks to override those decisions and thereby to compel YouTube to publish speech in ways it

20   has determined would be contrary to the preferences of its users who have opted for Restricted

21   Mode. That is exactly the kind of "intrusion into the function of editors" that the First

22   Amendment forbids. *Tornillo*, 418 U.S. at 258. Nothing in *Pruneyard* suggests otherwise.

23   Indeed, we are not aware of any case where *Pruneyard* has been applied to limit the First

24   Amendment rights of online services to make editorial judgments about the third-party content

25   that they make available. To the contrary, the First Amendment has repeatedly been applied to

26   protect search engines' decisions about what to include and exclude from their search results,

27   and how to rank those results. MTD 13-14 (citing *e-ventures Worldwide, LLC v. Google, Inc.*,

28   2017 U.S. Dist. LEXIS 88650, at *11-12 (M.D. Fla. Feb. 8, 2017); *Langdon v. Google, Inc.*, 474

1   F. Supp. 2d 622, 629-30 (D. Del. 2007); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 441

2   (S.D.N.Y. 2014)). Plaintiff ignores the First Amendment holdings in *e-ventures* and *Langdon*,

3   and its efforts to distinguish *Zhang* fail. PragerU says that "the search engine's results were

4   protected by the First Amendment because they 'inherently incorporate the search engine

5   company engineers' judgments about what material users are most likely to find responsive to

6   their queries.'" MTD Opp. 15-16 (quoting *Zhang*, 10 F. Supp. 3d at 438-39). But the same is true

7   here: the selection of videos available in Restricted Mode incorporates YouTube's judgments

8   about what material sensitive users are likely to find too mature. Nor can Plaintiff get around

9   *Zhang*—or the First Amendment—with (unsubstantiated) allegations that YouTube's decisions

10  were motivated by viewpoint discrimination. Even if that were true (and it is not), *Zhang* holds

11  that such judgments are at the core of what the First Amendment protects. 10 F. Supp. 3d at 440

12  (to hold a service provider liable for favoring "certain expression on core political subjects over

13  other expression on those same political subjects … would plainly 'violate[] the fundamental

14  rule of protection under the First Amendment'" (quoting *Hurley*, 515 U.S. at 573)).[1]

15          Plaintiff also argues that YouTube is different from a search engine, and somehow

16  outside the First Amendment's protection, because it supposedly holds itself out as an

17  "infrastructure or platform that delivers content in a neutral way." MTD Opp. 16. This is doubly

18  wrong. PragerU cites no case suggesting that, by holding itself out as a "neutral" platform, a

19  publishing platform would thereby lose its right to make editorial judgments. The *New York*

20  *Times*' slogan "All The News That's Fit To Print," does not deprive it of the constitutional

21  protection that *Tornillo* affords. In any event, YouTube simply does not describe itself as

22  Plaintiff suggests. As the Complaint (and the materials it incorporates) make clear, YouTube

23  categorically prohibits certain content and has content-based policies for restricting and limiting

24

25          [1] PragerU points to the passage in *Zhang* where the court explained that the search engine
    operators "lacked 'the physical power to silence anyone's voices, no matter what their alleged
26  market shares may be." That is equally so here. Despite Plaintiff's rhetoric about YouTube's
    supposed "worldwide monopoly over video content," PragerU is free to—and does—distribute
27  its videos using any number of other online platforms. Defendants' Preliminary Injunction
    Opposition ("PI Opp.") at 28 n.10. YouTube's decisions about the operation of Restricted Mode
28  do not silence Prager's voice.

1   user exposure to other material. Compl. ¶¶ 41, 44, 45; Willen Exs. 1-3. Indeed, by its nature,

2   Restricted Mode reflects a series of determinations about whether particular videos fit within

3   various content-based categories that YouTube has identified. That YouTube has a general

4   commitment to promoting user expression (and formally disclaims legal responsibility for its

5   users' content) does not change that. YouTube's support for free speech does not make

6   Restricted Mode anything other than a reflection of editorial decision-making, and it cannot strip

7   YouTube of its First Amendment protection for those editorial judgments.

8          Finally, this case is not about whether governments may sometimes "regulate private

9   property to ensure that the property is not used for illegal purposes." MTD Opp. 17.[2] It is about

10  whether a plaintiff can override the editorial judgments of a private publisher regarding whether

11  and how it should make third-party content available to its users. In *Hurley*, the Supreme Court

12  clearly articulated the principles that apply here:

13         [A] private speaker does not forfeit constitutional protection simply by combining
           multifarious voices, or by failing to edit their themes to isolate an exact message as the
14         exclusive subject matter of the speech. ... For that matter, the presentation of an edited
           compilation of speech generated by other persons is a staple of most newspapers' opinion
15         pages, which, of course, fall squarely within the core of First Amendment security....

16  515 U.S. at 569-70 (citations omitted). YouTube's selection of the content available to users of

17  Restricted Mode is entitled to similar protection. That alone requires dismissal of Plaintiff's case.

18  **II.    SECTION 230 OF THE CDA BARS PLAINTIFF'S CLAIMS**

19         The First Amendment's protections for editorial judgments are reinforced by Section 230,

20  which offers two separate immunities that also mandate dismissal of PragerU's claims.

21  Plaintiff's response departs from established law and from the policies underlying Section 230.

22         **A.    PragerU Cannot Evade Section 230(c)(2)(B)**

23         This is a paradigmatic case for Section 230(c)(2)(B), which immunizes service providers

24  for "any action taken to enable or make available … the technical means to restrict access to

25  material." PragerU suggests that 230(c)(2)(A) is the immunity that actually applies here. MTD

26  Opp. 6. While that provision also may bar Plaintiff's claims (*cf. Zango, Inc. v. Kaspersky Lab,*

27  _____

28         [2] The cases PragerU cites for this proposition are inapposite, as they all deal with the
    government's right to regulate *commercial speech*, which is not at issue here.

*Inc.*, 568 F.3d 1169, 1173 (9th Cir. 2009)), Google is not moving at this time on the basis of Section 230(c)(2)(A). Section 230(c)(2)(B) squarely covers cases, like this one, where a provider offers the "technical means" that others can use to restrict access to content. In such cases, the restriction occurs not as a result of unilateral decisions made by service providers, but rather by the independent choice that a third-party user makes to engage the filtering tool.

Plaintiff's efforts to narrow this important protection fail. As an initial matter, this Court can reject out of hand Plaintiff's contention that Restricted Mode cannot be a "technical means" under 230(c)(2)(B) because it incorporates antecedent manual classifications of videos. MTD Opp. 12. As the Ninth Circuit has explained, the statute covers a broad range of "software or enabling tools that filter, screen, allow, or disallow content." *Zango*, 568 F.3d at 1173. Human input into how such tools work—or what content they filter—does not abrogate the immunity. Indeed, that is how many filtering tools operate: objectionable content (*e.g.*, pornography or spam) is identified by some kind of human review, and the filtering software, when engaged by a user, then blocks that material. Plaintiff's limitation has no basis in the text, which specifies no requirement for the means that service providers may use to classify objectionable material for filtering. That is not surprising, as the legislative history makes clear that Congress intended the technologies covered by 230(c)(2)(B) to include those that incorporated human decisions about what to filter. *See, e.g.*, 141 Cong. Rec. H8470 (daily ed. Aug. 4, 1995) (Rep. White) ("In my district right now there are people developing technology that will allow a parent to sit down and program the Internet to provide just the kind of materials that they want their child to see.").

Plaintiff relies on *Zango*, but that decision only confirms that Section 230(c)(2)(B) applies. *Zango* held that the developer of anti-malware software (Kaspersky), was immune from claims brought by a company (Zango) arguing that its programs were incorrectly blocked by Kaspersky. In so holding, the Ninth Circuit rejected Zango's argument that the immunity did not apply because "Kaspersky, rather than the customer, determines that Zango is malware." *Zango*, 568 F.3d at 1176. That ruling did not turn on whether Kaspersky's classification decisions were manual or algorithmic. Nor did it matter whether the "end user could disable the filtering or blocking technology." MTD Opp. 12. The Ninth Circuit squarely held that the user's ability to

1   override Kaspersky's determinations about what should be blocked was irrelevant: "Regardless

2   of whether Zango is correct in its allegation that Kaspersky does not provide users of Kaspersky

3   products a choice to override the security software and download and use Zango, there is no

4   question that Kaspersky has 'made available' for its users the technical means to restrict access

5   to items that Kaspersky has defined as malware." *Zango*, 568 F.3d at 1176. So too here.[3]

6        PragerU's argument that its videos fall outside what can be restricted as "objectionable"

7   under Section 230(c)(2)(B) is equally unavailing. Plaintiff does not confront the statute's

8   subjective language—which focuses not on what *is* objectionable, but instead on what a service

9   provider (or a user) "*considers*" to be objectionable. *Enigma Software Grp. USA LLC v.*

10  *Malwarebytes Inc.*, 2017 U.S. Dist. LEXIS 184658, at *6-7 (N.D. Cal. Nov. 7, 2017); MTD 11.

11  By its terms, the statute reserves decision about what can be restricted as "objectionable" to the

12  judgments of service providers and their users. *Zango*, 568 F.3d at 1177 (230(c)(2)(B) protects

13  "providers who 'enable or make available to ... others' the technical means to restrict access to

14  material that either the user *or* the provider deems objectionable"). There certainly is no

15  requirement of "neutrality" in making those judgments. MTD Opp. 14. The Ninth Circuit's

16  reference to "neutral tools" addresses an entirely different issue: what constitutes the

17  "development" of content for purposes of the 230(c)(1) immunity. *Fair Hous. Council v.*

18  *Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008).

19        Nor does *ejusdem generis* apply to limit the "otherwise objectionable" language. As

20  YouTube has explained (PI Opp. 22-23), that canon does not apply where, as here, there is no

21  common element linking the specific items in the list and where it would undermine the statute's

22

23        [3] In any event, just as users could "uninstall Kaspersky and buy blocking software from
24   another company that is less restrictive" (*Zango*, 568 F.3d at 1177), Restricted Mode operates at
     the discretion of YouTube's users (Compl. ¶ 41). Those users, not YouTube, choose to engage
25   Restricted Mode, and they can turn it off at any time. Plaintiff takes issue with the decisions of
     libraries and schools to engage Restricted Mode (MTD Opp. 12-13), but YouTube has no control
26   over such decisions. And the idea that "young people cannot … otherwise access the video in
     question" (*id.*) if their school or library engages Restricted Mode is absurd. Plaintiff does not
27   argue that library and school computers are the only means by which young people access
     YouTube, much less that YouTube is the only way they could watch PragerU's videos.
28

1  purpose of giving discretion to service providers and their users to decide for themselves what

2  material should be restricted. *Enigma*, 2017 U.S. Dist. LEXIS 184658, at *6 (rejecting similar

3  argument).[4] Finally, insofar as PragerU suggests that (c)(2)(B) should be interpreted to include a

4  "good faith" requirement that its text conspicuously omits, it has no response to Judge Davila's

5  rejection of that argument. *Enigma*, 2017 U.S. Dist. LEXIS 184658, at *7-8.

6          Finally, it makes no difference that PragerU asserts that its videos did not contain

7  "objectively verifiable harmful material." MTD Opp. 12. The same was true in *Zango*, yet the

8  Ninth Circuit found the service provider to be immune. *See* 568 F.3d at 1172. Even if it mattered,

9  moreover, Plaintiff cannot point to any factual allegations plausibly suggesting that Google did

10 not consider the videos at issue to be objectionable for Restricted Mode. Nothing more is

11 required to apply Section 230(c)(2)(B).

12      **B.      Section 230(c)(1) Bars PragerU's Claims Based On YouTube's Classification**

13              **Of Certain PragerU Videos As Unavailable In Restricted Mode**

14          Section 230(c)(1) likewise shields the editorial actions that PragerU challenges here.

15 MTD 9-10. This Court has squarely held that this provision—independent of subsection (c)(2)—

16 applies to immunize service providers for decisions they take to block or remove third-party

17 content. *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. 2015)

18 (Koh, J.). That ruling was affirmed by the Ninth Circuit, 697 F. App'x 526 (9th Cir. 2017), and

19 followed by other judges in this District. *Lancaster v. Alphabet Inc.*, 2016 U.S. Dist. LEXIS

20 88908, at *7-8 (N.D. Cal. July 8, 2016); *Darnaa, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS

21 152126, at *23 (N.D. Cal. Nov. 2, 2016).

22          Plaintiff has little to say about this established line of cases. Ignoring *Darnaa*, PragerU's

23 effort to distinguish *SFJ* and *Lancaster* fails. MTD Opp. 10-11. PragerU claims that those cases

24 ─────────────

25          [4] Despite Plaintiff's fleeting (and puzzling) suggestion, applying Section 230(c)(2) as written
    does not make it some kind of "prior restraint on speech." MTD Opp. 13. PragerU cites *Reno v.*

26 *ACLU*, 521 U.S. 844 (1997), but in contrast to the provisions that the Supreme Court struck
    down there, Section 230 neither requires the restriction of speech nor penalizes those who fail to

27 restrict it. It simply ensures that platforms that regulate content that they deem objectionable,
    according to their own standards (rather than the government's), will not face liability. Providing

28 such an immunity does not violate the First Amendment.

─────────────

1    protected only decisions not to publish content, not claims of discrimination arising from the

2    "application of a filtering tool." *Id.* But *SFJ did* involve a discrimination claim—an alleged

3    violation of Title II of the Civil Rights of Act of 1964. 144 F. Supp. 3d at 1090-91. Moreover,

4    Plaintiff does not (and cannot) explain why there is any meaningful difference under Section 230

5    between removing content altogether and blocking it from a limited subset of users. Both are

6    publisher decisions. If, as this Court has held, (c)(1) bars claims based on the allegedly

7    discriminatory and unlawful removal of user content, it certainly bars the claims here.[5]

8          Unable to evade these cases, PragerU spends most of its time arguing that applying (c)(1)

9    this way would render subsection (c)(2) "pure surplusage." MTD Opp. 7. But that is not so. As

10   the Ninth Circuit has explained: "Subsection (c)(1), by itself, shields from liability all publication

11   decisions, whether to edit, to remove, or to post, with respect to content generated entirely by

12   third parties. Subsection (c)(2), for its part, provides an additional shield from liability, … .

13   Crucially, the persons who can take advantage of this [immunity] are not merely those whom

14   subsection (c)(1) already protects, but *any* provider of an interactive computer service." *Barnes*

15   *v. Yahoo! Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009). Thus, even if the two provisions sometimes

16   overlap, they remain distinct. Subsection (c)(1), for example, does not apply where the service

17   provider created or "developed" the content at issue, but (c)(2) does. *Id.* It does not read (c)(2)

18   out of the statute to apply (c)(1) to bar claims that seek to hold providers liable as publishers,

19   including for the decision to "withdraw from publication third-party content." *Id.* at 1102.

20         Likewise, there is no question that YouTube had no role in creating or developing the

21   "information" at issue (PragerU's videos). That puts this case in contrast to *Roommates.com*, on

22   which Plaintiff heavily relies. While that case held that Section 230(c)(1) partially immunized

23   the service provider from a housing-discrimination claim (521 F.3d at 1173-75), it concluded

24   that the statute did not apply insofar as the website "developed" the allegedly illegal content at

25

26         [5] It is true that *e-ventures* declined to apply (c)(1) to a search engine's decision to exclude a
     plaintiff's websites from search results, but that was dicta, as the court ultimately threw out the
27   plaintiff's claims as barred by the First Amendment. 2017 U.S. Dist. LEXIS 88650, at *10-12. In
     any event, this Court should follow its own established precedent—and the rulings of other
28   courts in this District—about how to apply Section 230(c)(1) to cases like this one.

1    issue—which it did by asking discriminatory questions of its users and requiring users to provide

2    allegedly unlawful responses to those questions. *Id*. at 1164-67. There is nothing like that here.

3    PragerU points to no illegal content that YouTube created or required its users to create. Its

4    claims challenge the "application of a filtering tool" to purely user-created videos. MTD Opp.

5    11. That falls squarely within Section 230(c)(1).[6]

6         Equally misguided is PragerU's argument that Section 230 cannot protect "providers who

7    are alleged to be acting unlawfully and in bad faith." MTD Opp. 9. If the provider was not itself

8    alleged to have done something unlawful, it would have no need for an immunity in the first

9    place. That is why 230(c)(1), which has no good faith requirement, has been applied to bar

10   claims accusing providers of a wide range of illegal activity—including discrimination (*SFJ*),

11   providing material support for terrorism (*Gonzalez v. Google LLC*, 2017 U.S. Dist. LEXIS

12   175327 (N.D. Cal. Oct. 23, 2017)), intentionally inflicting emotional distress (*Lancaster*), unfair

13   competition, and false advertising (*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1108, 1118-19

14   (9th Cir. 2007)). That does not mean that YouTube is seeking "limitless immunity for online

15   activity or conduct related to it." MTD Opp. 9. It is seeking immunity for classic editorial

16   functions: deciding whether and how to publish third-party content.

17   **III.    PLAINTIFF STATES NO VIABLE CAUSE OF ACTION**

18        **A.    PragerU Cannot Save Its Constitutional Claims**

19        YouTube has explained why PragerU cannot assert constitutional claims based on

20   Restricted Mode. *See* MTD 15-19; PI Opp. 11-20. These claims fail not because of YouTube's

---

22   [6] Plaintiff's suggestion (MTD Opp. 11) that YouTube must be a content developer under
23   Section 230 because it claims First Amendment protection over its Restricted Mode decisions
     misses the point. YouTube's protections here are as an editor—not an original speaker. As
24   explained above, the First Amendment protects YouTube's decisions about how to present,
     organize, regulate, and display third-party material. But this does not make YouTube responsible
25   for the *content* of that material. To the contrary, a "central purpose of [Section 230] was to
     protect from liability service providers and users who take some affirmative steps to edit the
26   material posted." *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003). Likewise, this is not a
     case—in contrast to those that PragerU cites (MTD Opp. 11)—where a service provider
27   published its own "independent editorial commentary" that is alleged to be defamatory or
     otherwise unlawful. It is a case involving the "traditional editorial functions" protected by
28   Section 230(c)(1).

---

"naked title" over its service (MTD Opp. 18), but by application of established constitutional principles. Against those principles, Plaintiff offers four unconvincing arguments.

*First*, PragerU cannot get around *Howard v. AOL*, 208 F.3d 741 (9th Cir. 2000), which rejected similar constitutional claims against an Internet service provider. In that case, the Ninth Circuit squarely held that allegations that the provider was a "quasi-public utility" that "involv[es] a public trust" are "insufficient" to transform a private party into an "'instrument or agent' of the government." *Id.* at 754. So it is here. PragerU suggests that this case is different based on allegations about YouTube's popularity and its public statements supporting online freedom. MTD Opp. 18. But Plaintiff does not explain how these allegations meaningfully distinguish this case from *Howard*—or from *Shulman v. Facebook.com*, 2017 U.S. Dist. LEXIS 183110 (D.N.J. Nov. 6, 2017), which held that Facebook is not bound by the First Amendment. Nor could it: what was missing there was not allegations about the service providers' positions on free speech; it was allegations that they were actually "state actors." *Id.* at *8-9 (explaining that the First Amendment "does not apply to private parties"). YouTube does not become a instrumentality of the state by expressing a general preference in favor of user self-expression.

*Second*, PragerU argues that a private property owner "who operates its property as a public forum for speech is subject to judicial scrutiny." MTD Opp. 18-19. But that simply is not the law (*e.g.*, *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976)), and Plaintiff's assertion is unsupported by the cases it invokes. This case does not involve government restrictions on speech; YouTube is not the equivalent of a "company town" or a shopping center; and the anti-SLAPP law has no bearing on whether YouTube is bound by constitutional rules. PI Opp. 11-17. Beyond that, Plaintiff cannot deny the sweeping consequences that would result from subjecting online platforms to constitutional regulation. That would preclude all manner of salutary content regulation that online services routinely engage in—such as blocking sexually explicit or violent videos and removing racist or hateful rhetoric. *Id.* at 12, 17-21. Neither the First Amendment nor the Liberty of Speech Clause require that result.

*Third*, Plaintiff cannot escape *hiQ Labs Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1114-17 (N.D. Cal. 2017), which squarely rejected a similar effort to extend the Liberty of

1    Speech Clause to private online service providers. PragerU says nothing about Judge Chen's

2    observation that "there are a host of potential 'slippery slope' problems that are likely to surface

3    were *Pruneyard* to apply to the Internet." *Id.* at 1116. Instead, it chides Judge Chen for

4    supposedly not considering that California's anti-SLAPP law has "sole reference to First

5    Amendment." PI Opp. 19. But this argument is makeweight: as YouTube explained (*id.* 15-16),

6    nothing in California law supports the idea that merely because a place is a "public forum" under

7    the anti-SLAPP law, its owner is thereby bound by the Liberty of Speech Clause. Judge Chen

8    was right to dismiss that argument, and this Court should do likewise.

9        *Fourth*, PragerU contends that the California Supreme Court has not limited *Pruneyard*

10   to shopping centers, but it cannot deny that no court have ever extended *Pruneyard* outside of

11   that context. *Accord Buza v. Yahoo!, Inc.*, 2011 U.S. Dist. LEXIS 122806, at *4-5 (N.D. Cal.

12   Oct. 24, 2011). The cases that Plaintiff cites (MTD Opp. 19-20) did no such thing (*see* PI Opp.

13   20), and they provide no support for the unprecedented extension of California law that PragerU

14   seeks.

15                    **B.      PragerU Cannot Save Its Unruh Act Claim**

16       Plaintiff equally fails to save its non-constitutional claims. As for the Unruh Act, it is

17   well settled that "additional scrutiny" is required to apply the statute "[w]hen First Amendment

18   rights are involved." *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1064,

19   1072 (2005). PragerU cannot evade that rule. It seeks to use the Unruh Act to override

20   YouTube's editorial judgment to exclude certain videos from Restricted Mode. Such a claim

21   directly burdens YouTube's First Amendment rights: it would force YouTube to publish content

22   in a way that it has determined is contrary to the interests of its most sensitive users. That

23   triggers "rigorous scrutiny" (*id.* at 1074)—a burden Plaintiff makes no effort to satisfy.

24       Despite what PragerU argues, there is no requirement that the decision to restrict must

25   itself be "expressive" or that the defendant be associated with "discordant views" for extra

26   scrutiny to apply. *U.S. W. Falun Dafa Ass'n v. Chinese Chamber of Commerce*, 163 Cal. App.

27   4th 590, 606 (2008), holds no such thing and does not help Plaintiff. To the contrary, that case

28   *rejected* an Unruh Act claim by an organization seeking to compel a private organization to

1    allow it to participate in a street fair. PragerU's effort to force its videos into Restricted Mode

2    fares no better.[7] But rigorous scrutiny would apply even if YouTube had to show that

3    unrestricting PragerU's videos would send a misleading message. For YouTube to include those

4    videos in Restricted Mode would suggest that YouTube deemed them appropriate for users who

5    activate that tool—a view that YouTube does not share.

6         Beyond that, Plaintiff does not dispute that it must establish *intentional* discrimination,

7    but it has failed to do so. As PragerU admits, its allegations are of "differential treatment" (MTD

8    Opp. 22)—which the Ninth Circuit expressly rejected as insufficient. *Greater L.A. Agency of*

9    *Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); MTD at 18-19. Ignoring this on-

10   point ruling, Plaintiff cites a string of cases that did not involve the Unruh Act and do not disturb

11   the requirement to plausibly allege willful discrimination under the statute. MTD Opp. 22. In any

12   event, PragerU's allegations do not "tend[] to exclude" non-discriminatory explanations for

13   YouTube's decisions. Indeed, the fact that the vast majority of PragerU's videos are *available* in

14   Restricted Mode (PI Opp. 7)—plus the self-evidently mature nature of those that are not (*e.g.*,

15   MTD 6 n.2)—dispels any suggestion that YouTube is acting based on PragerU's identity or

16   politics, rather than on the content of its individual videos.

17        **C.     PragerU Cannot Save Its UCL Claim**

18        PragerU ignores the UCL's safe harbor for conduct that has been expressly permitted by

19   the legislature—here, by Section 230. MTD 19. Beyond that, Plaintiff still does not clearly

20   identify the UCL theory upon which it relies. Insofar as PragerU seeks to advance a fraud claim,

21   it cannot overcome its failure to satisfy Rule 9(b) by identifying with particularly the statements

22   _____

23      [7] Plaintiffs' other cases are equally unavailing. In *North Coast Women's Care Medical*
     *Group, Inc. v. Superior Court*, the California Supreme Court held that physicians were not being

24   forced to speak at all when ordered to comply with laws regulating the accessibility of health
     care benefits, 44 Cal. 4th 1145, 1157 (2008). Here, in contrast, YouTube's editorial decisions are

25   covered by the First Amendment. *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481
     U.S. 537, 549 (1987), held that "the State's compelling interest in eliminating discrimination

26   against women" outweighed the defendant's right of expressive association. There is no similar
     compelling state interest here. Finally, *Long v. Valentino*, 216 Cal. App. 3d 1287 (1989), simply

27   stands for the proposition that words alone can in some circumstances violate the Unruh Act, but

28   that is not at issue here.

that were supposedly false or misleading. And there is nothing in the complaint to suggest that the general class of statements Plaintiff references are fraudulent. To the contrary, YouTube's statements about free expression have always existed alongside public-facing policies that allow it to remove and restrict access to users' content. Willen Decl. Exs. 1-6. And while YouTube aims to apply the same standards to everyone, nowhere does it affirmatively hold out Restricted Mode out as a "viewpoint neutral tool" (MTD Opp. 22). Plaintiff cannot advance a UCL claim by attacking an imaginary statement. PragerU's new claim that YouTube made specific statements "about Plaintiff's videos," (*id.*) is similarly unsupported. There are no such statements—but even if there were, Plaintiff does not explain how it could have detrimentally relied on them, as it must under the UCL. Furthermore, a statement communicating YouTube's *opinion* about the appropriateness of applying Restricted Mode to a given video simply is not capable of being proven false and, for that reason as well, cannot support a claim. *See, e.g.*, *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 354 (2004).

Plaintiff's arguments under the "unfairness" prong fare no better. PragerU acknowledges that it advances its claims as a business competitor (MTD Opp. 22), but it does not come close to meeting the test Ninth Circuit law requires for such claims. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014).[8] Indeed, Plaintiff has nothing to say about *Levitt*, which rejected an unfairness claim based on just the kind of vague assertions offered here. *Id*. at 1136-37. The opposition brief does not even try to explain how, even if YouTube's categorization of PragerU's videos as eligible for Restricted Mode harmed PragerU itself, that had any broader impact on competition in some relevant market. Despite a passing reference to PragerU competing "with other speakers including Defendants for the public's attention for advertising revenue and to participate in the marketplace of ideas" (MTD Opp. 23), Plaintiff does not actually allege (nor could it) that YouTube itself has uploaded videos similar to PragerU's or that YouTube

---

[8] Even if the looser "balancing" test applied here—which it does not, given the nature of Plaintiff's claim—PragerU's conclusory arguments (MTD Opp. 22-23) would not be sufficient. Any burden on PragerU from having a handful of its video not available in Restricted Mode, even as they remain available on YouTube's general service, is self-evidently modest, and Plaintiff cannot deny that Restricted Mode advances compelling policy interests in protecting sensitive users from videos they may find too mature. MTD 20 n.6.

1   somehow competes with PragerU for advertising revenue. Likewise, the UCL does not regulate

2   competition in the "marketplace of ideas" (*id*.), and could not do so under the First Amendment.

3   **D.      PragerU Cannot Save Its Implied Covenant Claim**

4          As YouTube has explained, it is vested with the contractual right to police its service,

5   including the right to remove content without notice and in its sole discretion. MTD 22 (citing

6   Willen Decl. Ex. 1, §§ 4.J, 6.F, and & 7.B). PragerU does not—and could not—argue that

7   YouTube's actions are not covered by this language. Instead, it argues that there is some kind of

8   implied contract obligation for YouTube not to restrict videos based on political viewpoint. MTD

9   Opp. 23. That is not what happened here, and Plaintiff's conclusory allegations—based on a self-

10  selected comparison of how videos on topics Plaintiff says are similar were treated—do not

11  plausibly suggest otherwise. But using the implied covenant to read an obligation of viewpoint

12  neutrality into a contract that otherwise gives broad authority to a publisher to remove or restrict

13  content only underscores the profond First Amendment problems that PragerU's claim presents.

14         It is also a misapplication of the implied covenant. Plaintiff cannot use that covenant to

15  override the *express* provisions of the agreement disclaiming any obligation for YouTube to

16  continually make PragerU's videos available on any given part of the service. That would rewrite

17  the parties' agreement, not enforce it. Tellingly, Plaintiff ignores the ruling in *Song fi Inc. v.*

18  *Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015), which held just that. Nor is the implied

19  covenant needed to avoid an illusory contract. Even though YouTube wields broad discretion to

20  exclude videos from Restricted Mode, it continued at all times to provide content-hosting

21  services to PragerU for all the videos at issue and allowed PragerU to continue to access and

22  fully use the YouTube service. Nothing in the Agreement requires more.[9]

23

24         [9] Plaintiff is also barred from recovering damages on any implied-breach claim by the
    Agreement's limitation of liability clause. MTD 22. Plaintiff argues that this clause does not
25  cover a so-called "tortious breach of the implied covenant." MTD Opp. 24. But that was the very
    argument that Judge Alsup rejected in *Darnaa*, which held that the same clause barred an
26  implied-covenant claim alleging bad-faith removal of a YouTube video. *Darnaa, LLC v. Google*
    *Inc.*, 236 F. Supp. 3d 1116, 1124-25 (N.D. Cal. 2017). In any event, tortious breach of contract
27  simply does not exist under California law, outside of insurance agreements. *Food Safety Net*
    *Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1127 (2012).
28

1

### E.      PragerU Cannot Save Its Lanham Act Claim

2   The opposition brief confirms that PragerU has no viable claim under the Lanham Act.

3   Though Plaintiff ignores the text of the statute and cites not a single case, it apparently seeks to

4   proceed under the statute's "false advertising" prong (§ 1125(a)(1)(B)). PragerU references two

5   kinds of statements: (1) those about the "viewpoint neutrality of Restricted Mode"; and (2) the

6   statement supposedly communicated when YouTube restricted PragerU's videos. MTD Opp. 24-

7   25. Beyond the fact that this theory has no basis in the Complaint, it fails as a matter of law.

8   For one, Plaintiff does not claim that any of the supposed statements are in "commercial

9   advertising or promotion," as required by the Lanham Act. *See Darnaa, LLC v. Google, Inc.*,

10  2015 U.S. Dist. LEXIS 161791, at *24 (N.D. Cal. Dec. 2, 2015). What is more, the "statements"

11  that Plaintiff references simply do not exist. PragerU has not identified any public statement

12  where YouTube described Restricted Mode as "viewpoint neutral." The same is true for

13  statements about PragerU's videos. In neither the Complaint nor the opposition has Plaintiff

14  pointed to anything that YouTube said publicly about its classification of those videos. Nor could

15  it. But even if such statements existed, they would not be actionable. YouTube's opinion that

16  some of PragerU's videos qualify for exclusion from Restricted Mode is not capable of being

17  proven true or false and cannot give rise to a Lanham Act claim. *See, e.g.*, *Coastal Abstract*

18  *Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

19  ### CONCLUSION

20  PragerU's Complaint should be dismissed without leave to amend.

21

22  February 23, 2018                                   Respectfully submitted,

23                                                      WILSON SONSINI GOODRICH & ROSATI
                                                        Professional Corporation
24
                                                        By: */s/ Brian M. Millen*
25                                                      Brian M. Willen

26                                                      *Attorneys for Defendants Google LLC and*
                                                        *YouTube, LLC.*
27

28