UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PRAGER UNIVERSITY,<br><br>             Plaintiff,<br><br>      v.<br><br>GOOGLE LLC, et al.,<br><br>             Defendants. | Case No. 17-CV-06064-LHK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 24, 31 |

Plaintiff Prager University ("Plaintiff") sues Defendants YouTube, LLC ("YouTube") and Google LLC ("Google") (collectively, "Defendants") for allegedly censoring some of the videos that Plaintiff uploaded on YouTube based on Plaintiff's conservative political identity and viewpoint.  Before the Court are (1) Plaintiff's motion for a preliminary injunction (ECF No. 24); and (2) Defendants' motion to dismiss Plaintiff's complaint (ECF No. 31).[1]  Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS with leave to

---

[1] Also before the Court is Plaintiff's Administrative Motion for Leave to File Supplementary Material.  ECF No. 48.  That motion is GRANTED.

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    amend Defendants' motion to dismiss Plaintiff's federal causes of action, DISMISSES with leave

2    to amend Plaintiff's state law causes of action, and DENIES without prejudice Plaintiff's motion

3    for a preliminary injunction.

4    **I.      BACKGROUND**

5        **A. Factual Background**

6            Plaintiff is "an educational 501(c)(3) nonprofit company" with its principal place of

7    business in Los Angeles County, California.  ECF No. 1 ("Compl.") ¶ 17.  Plaintiff states that its

8    "mission" is to "provide conservative viewpoints and perspectives on public issues that it believes

9    are often overlooked or ignored."  *Id.* ¶ 33.  As part of its mission, Plaintiff creates short

10   educational videos, the content of which "espouses viewpoints and perspectives based on

11   conservative values."  *Id.* ¶ 34.  Despite its name, Plaintiff "is not an academic institution and does

12   not offer certifications or diplomas."  *Id.*

13           Defendant YouTube is a "for profit limited liability corporation" that is "wholly owned

14   by" Defendant Google, a "for profit, public corporation."  *Id.* ¶¶ 18–19.  Both Defendants are

15   "organized under the laws of the State of Delaware," and have their principal place of business in

16   Mountain View, California.  *Id.*  YouTube is the "largest video-sharing website in the world."  *Id.*

17   ¶ 36.  YouTube "allows users to upload, view, rate, share, add to favorites, report, [and] comment

18   on videos."  *Id.*

19           Plaintiff states that Defendants "hold YouTube out to the public as a forum intended to

20   defend and protect free speech where members of the general public may speak, express, and

21   exchange their ideas."  *Id.* ¶ 3.  Specifically, Plaintiff points to Defendants' representations that

22   "voices matter" and that YouTube is "committed to fostering a community where everyone's

23   voice can be heard."  *Id.*  Plaintiff further identifies statements made by YouTube in its "Official

24   Blog" that (1) YouTube's "mission" is to "give people a voice" in a "place to express yourself"

25   and in a "community where everyone's voice can be heard"; and (2) YouTube is "one of the

26   largest and most diverse collections of self-expression in history" that gives "people opportunities

27   Case No. 17-CV-06064-LHK

28   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1   to share their voice and talent no matter where they are from or what their age or point of view."

2   *Id.* ¶ 28.  Plaintiff states that "[s]ince its inception, [Plaintiff] has posted more than 250 of [its]

3   videos on" YouTube.  *Id.* ¶ 34.

4         Plaintiff alleges that, despite YouTube's purported viewpoint neutrality, Defendants have

5   discriminated against Plaintiff based on Plaintiff's political identity and viewpoint by censoring

6   certain videos that Plaintiff uploaded on YouTube.  *Id.* ¶ 52.  According to Plaintiff, this

7   censorship takes the form of putting age restrictions on some of Plaintiff's videos and/or excluding

8   them from YouTube's "Restricted Mode" setting.  YouTube's "Restricted Mode" setting is an

9   "optional feature to help institutions like schools as well as people who wanted to better control

10  the content they see on YouTube."  *Id.*  Defendants "ensure that videos containing potentially

11  mature content will not be shown to viewers who have Restricted Mode turned on" based on

12  certain criteria contained in different "guidelines."  *Id.* ¶ 42.  For example, Defendants apply a set

13  of "Restricted Mode Guidelines" that contain criteria like whether the video in question contains

14  discussions about drug use, "overly detailed conversations about" sex, or "inappropriate

15  language."  *Id.*  Further, if a video is "flagged" as "inappropriate" by a viewer, a "team" of

16  YouTube employees will review that video for "violations of [YouTube's] Community

17  Guidelines," which focus on "[n]udity of sexual content," "[v]iolent or graphic content,"

18  "[h]armful or dangerous content," "[h]ateful content," copyright violations, "threats," "spam,

19  misleading metadata, and scams."  *Id.* ¶ 43.  Beyond that, "on some occasions, a video may not

20  violate the Community Guidelines but may still be subject to" an age restriction—and are

21  therefore made "not visible to users who are logged out, are under 18 years of age, or have

22  Restricted Mode enabled"—based on certain age-restriction criteria, including "vulgar language,"

23  "violence and distributing imagery," "nudity and sexually suggestive content," and "portrayal of

24  harmful or dangerous activities involving content that intends to incite violence or encourage

25  dangerous or illegal activities."  *Id.* ¶ 45.  Plaintiff alleges that Defendants provide "a limited

26  appeal process for any users who believe that the application of age restriction filtering to the

27                                                    3

28  Case No. 17-CV-06064-LHK
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
    DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
    A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    user's video contents is unwarranted or inappropriate." *Id.* ¶ 46.  Users may appeal the age

2    restriction on any particular video only once.  *Id.*

3              Plaintiff alleges that although YouTube has insisted in the past that YouTube's Restricted

4    Mode and age restriction filtering—which purportedly apply the criteria described above—should

5    not and are not intended to filter out content based on political viewpoints, *see id.* ¶ 51,

6    Defendants have restricted access to some of Plaintiff's videos "based on [Defendants']  animus

7    towards [Plaintiff's] political identity and viewpoint." *Id.* ¶ 52.  Plaintiff also appears to allege

8    that Defendants have "demonetized" some of Plaintiff's videos—by preventing advertisements

9    from running on those videos—in a viewpoint-discriminatory manner.  *See id.* ¶ 91 ("No

10   compelling, significant, or legitimate reason justifies demonetizing or restricting Plaintiff's

11   videos.").  Plaintiff does not allege, however, that any of Plaintiff's videos have been completely

12   removed from YouTube.  As discussed above, Plaintiff alleges only that some of Plaintiff's videos

13   have been demonetized or censored (in the form of an age restriction or exclusion from the

14   Restricted Mode setting) based on Defendants' intolerance towards Plaintiff's political views.

15             To support its allegations of viewpoint discrimination, Plaintiff includes a chart that lists

16   (1) a number of Plaintiff's videos to which access has been restricted by YouTube; and (2) various

17   unrestricted videos that discuss the same topics as Plaintiff's videos, but from a liberal

18   perspective.  *See id.* at 26–32.  For example, the chart shows that one of Plaintiff's videos titled

19   "Are 1 in 5 women in college raped?" has been restricted by YouTube, but that another video

20   titled "Author Jon Krakauer on new book 'Missoula' and college rape epidemic" and uploaded by

21   the "CBS This Morning" channel has no such restriction.  *Id.* at 26.  Additionally, Plaintiff alleges

22   that content from some of Plaintiff's restricted videos "was not restricted after it was copied and

23   posted by other content providers or vloggers."  *Id.* ¶ 70.

24             Plaintiff alleges that Defendants' discriminatory censorship of Plaintiff's videos "continues

25   to this day."  *Id.* ¶ 67.  Plaintiff's chart indicates that as of October 23, 2017, at least twenty-one of

26   Plaintiff's videos remain restricted by YouTube.  *See id.* at 26–32.

27                                                        4

28   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
     DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
     A PRELIMINARY INJUNCTION

### B. Procedural History

On October 23, 2017, Plaintiff filed the instant suit against Defendants.  *See* Compl. Plaintiff's complaint asserts seven causes of action: (1) violation of Article I, section 2 of the California Constitution; (2) violation of the First Amendment of the United States Constitution; (3) violation of the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code. § 51 *et seq.*; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) breach of the implied covenant of good faith and fair dealing; (6) violation of the Lanham Act, 15 U.S.C. § 1125 *et seq.*; and (7) a claim for declaratory relief based on Defendants' alleged violations of the First Amendment of the United States Constitution; Article I, section 2 of the California Constitution; the Unruh Act; and the Lanham Act.  Compl. ¶¶ 74–122.[2]

On December 29, 2017, Plaintiff filed a motion for a preliminary injunction, *see* ECF No. 24, and Defendants filed a motion to dismiss Plaintiff's complaint.  *See* ECF No. 31 ("Mot.").  On February 9, 2018, Defendants opposed Plaintiff's preliminary injunction motion, *see* ECF No. 37, and Plaintiff opposed Defendants' motion to dismiss.  *See* ECF No. 33 ("Opp.").  Then, on February 23, 2018, Plaintiff filed a reply in support of its motion for a preliminary injunction, *see* ECF No. 41, and Defendants filed a reply in support of their motion to dismiss Plaintiff's complaint.  *See* ECF No. 39 ("Reply").

## II.    LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead

---

[2] The Court notes that Plaintiff's "Seventh Cause of Action" for declaratory relief, Compl. ¶¶ 120–22, "is not an independent cause of action or theory of recovery."  *Wishnev v. Northwestern Mut. Life. Ins. Co.*, 162 F. Supp. 3d 930, 952 (N.D. Cal. 2016).  Rather, it is a claim for a particular remedy (declaratory relief) that is premised on four of Plaintiff's substantive causes of action.

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

United States District Court
Northern District of California

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

6

be cured by the allegation of other facts." *Id*. at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**C. Motion for Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, never granted as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).  The issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**D. Judicial Notice**

In support of Plaintiff's motion for a preliminary injunction, Plaintiff has requested the Court to take judicial notice of Plaintiff's complaint in the instant case.  ECF No. 28.  Defendants do not oppose this request.  Further, in support of Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff has requested the Court to take judicial notice of a class action complaint against Defendant Google filed in Santa Clara County Superior Court by two former employees.  ECF No. 35.  Defendants oppose this request by arguing that the complaint is irrelevant and that the alleged misconduct by Google in the complaint is "subject to reasonable dispute."  ECF No. 40.

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Public records,

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

United States District Court
Northern District of California

including judgments and other public filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000 (taking judicial notice of a filed complaint as a public record).

However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute." (internal quotation marks and citation omitted)), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The Court agrees with Plaintiff that both the complaint in the instant case and the class action complaint against Google are proper subjects of judicial notice because they are matters of public record. *See Rothman*, 220 F.3d at 92 (taking judicial notice of a filed complaint as a public record). However, because the facts alleged in both complaints are subject to reasonable dispute, the Court will not take judicial notice of the facts contained within those complaints. Moreover, the facts in the class action complaint against Google do not have a direct relation to the matters at issue in the instant case.

## III.   DISCUSSION

As discussed above, Defendants have moved to dismiss Plaintiff's complaint, and Plaintiff has moved for a preliminary injunction. The Court first discusses Defendants' motion to dismiss, and then discusses Plaintiff's motion for a preliminary injunction.

### A.   Defendants' Motion to Dismiss

In their motion to dismiss, Defendants argue that Plaintiff's complaint should be dismissed because (1) the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c), bars all of Plaintiff's causes of action except Plaintiff's First Amendment claim, Mot. at 8–13; (2) the First Amendment

8

bars all of Plaintiff's causes of action, *id.* at 13–15; and (3) Plaintiff's complaint fails to sufficiently plead any causes of action. *Id.* at 15–24. The Court finds that Plaintiff's complaint should be dismissed for failure to state any federal claims, and therefore declines to address Defendants' other arguments for dismissal. The Court first addresses Plaintiff's federal causes of action, and then addresses together Plaintiff's state law claims.

### 1. Federal Causes of Action

As discussed above, Plaintiff's complaint asserts only two substantive federal causes of action: violation of the First Amendment, and violation of the Lanham Act. Further, Plaintiff's claim for declaratory relief is premised in part on Defendants' alleged violations of the First Amendment and the Lanham Act. The Court agrees with Defendants that Plaintiff has failed to state a claim under either the First Amendment or the Lanham Act, and accordingly, Plaintiff has failed to state a claim for declaratory relief premised on the First Amendment and the Lanham Act. The Court addresses each claim in turn.

### a. First Amendment

Plaintiff argues that Defendants violated Plaintiff's First Amendment rights by applying their "censorship criteria . . . as a pretext to" demonetize and restrict access to some of Plaintiff's videos "based not on the content of the [videos] but because of [Plaintiff's] identity and political viewpoints." Compl. ¶ 89. In their motion to dismiss, Defendants contend that Plaintiff's First Amendment claim fails because Plaintiff does not sufficiently allege that Defendants are state actors. Mot. at 15–16. For the reasons discussed below, the Court agrees with Defendants.

"It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976). Plaintiff does not dispute that Defendants are private entities. *See* Compl. ¶¶ 18–19; ECF No. 25 at 14 (conceding that "Defendants are not public entities"). However, in some circumstances, a private entity can be a state actor for constitutional purposes. Specifically, "'[t]he Supreme Court has articulated four tests for determining whether a private party's actions

9

United States District Court
Northern District of California

United States District Court
Northern District of California

amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.'"  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (alteration adopted) (quoting *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002)).

Plaintiff contends that Defendants are state actors under the "public function" test.  *See* Compl. ¶ 87 (stating that "Defendants further act as state actors because Defendants and the YouTube site perform an exclusively and traditionally public function").  Under the public function test, "[p]rivate activity becomes a 'public function' only if that action has been 'traditionally the exclusive prerogative of the State.'"  *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1214 (9th Cir. 2002) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).  The United States Supreme Court has stated that "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).  Examples of functions that have been deemed to be "traditionally the exclusive prerogative of the State" include "hold[ing] [public] elections," "govern[ing] a town," and "serv[ing] as an international peacekeeping force."  *Brunette*, 294 F.3d at 1214 (citing *Terry v. Adams*, 345 U.S. 461, 484 (1953), *Marsh v. Alabama*, 326 U.S. 501, 507–09 (1946), and *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219, 1226–27 (5th Cir. 1982)).

Plaintiff does not point to any persuasive authority to support the notion that Defendants, by creating a "video-sharing website" and subsequently restricting access to certain videos that are uploaded on that website, Compl. ¶¶ 35, 41–46, have somehow engaged in one of the "very few" functions that were traditionally "exclusively reserved to the State."  *Flagg Bros.*, 436 U.S. at 158. Instead, Plaintiff emphasizes that Defendants hold YouTube out "as a public forum dedicated to freedom of expression to all" and argues that "a private property owner who operates its property as a public forum for speech is subject to judicial scrutiny under the First Amendment."  Opp. at 18.

10

United States District Court
Northern District of California

1   Plaintiff primarily relies on the United States Supreme Court's decision in *Marsh v.*

2 *Alabama* to support its argument, but *Marsh* plainly did not go so far as to hold that any private

3 property owner "who operates its property as a public forum for speech" automatically becomes a

4 state actor who must comply with the First Amendment.  Opp. at 18.  In *Marsh*, a "company

5 town" that was entirely owned by a private corporation, Gulf Shipbuilding Corporation, imposed a

6 criminal penalty on a Jehovah's Witness who distributed religious literature "on the premises of

7 the company-owned town contrary to the wishes of the town's management."  326 U.S. at 502.

8 The company town had "all the characteristics of any other American town," including

9 "residential buildings, streets, a system of sewers, a sewage disposal plant and a 'business block'

10 on which business places [were] situated."  *Id.*  In short, there was "nothing to distinguish" the

11 company town "from any other town and shopping center" except for the fact that a private

12 corporation owned all the property and ran all aspects of the town, including all of its municipal

13 functions.  *Id.*  Ultimately, despite the fact that Gulf Shipbuilding Corporation was a private entity,

14 the Supreme Court held that it was a state actor that was required to run the town in compliance

15 with the Constitution.  *Id.* at 505–08.  As a result, the criminal penalty imposed on the Jehovah's

16 Witness was due to be reversed because it violated her First Amendment rights.  *Id.* at 504–05.

17   *Marsh*'s holding stands for the proposition that a private entity that owns all the property

18 and controls all the municipal functions of an entire town is a state actor that must run the town in

19 compliance with the Constitution.  Thus, contrary to Plaintiff's position, *Marsh* does not compel

20 the conclusion that Defendants are state actors that must comport with the requirements of the

21 First Amendment when regulating access to videos on YouTube.  Unlike the private corporation in

22 *Marsh*, Defendants do not own all the property and control all aspects and municipal functions of

23 an entire town.  Far from it, Defendants merely regulate content that is uploaded on a video-

24 sharing website that they created as part of a private enterprise.

25   To be sure, *Marsh* does contain some broader language that could be construed to support

26 Plaintiff's position that because Defendants hold out and operate their private property (YouTube)

27
Case No. 17-CV-06064-LHK

28 ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

as a forum dedicated to allowing its users to express diverse points of view, Defendants should be treated as state actors "subject to judicial scrutiny under the First Amendment." Opp. at 18. For example, the United States Supreme Court stated in *Marsh* that "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." 326 U.S. at 506.

However, subsequent United States Supreme Court decisions confirm that *Marsh* cannot be extended to support Plaintiff's position despite *Marsh*'s broad language. Specifically, as discussed below, although the Supreme Court initially appeared to expand the reach of *Marsh* beyond the context of a company town in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1968), the Supreme Court quickly disavowed that expansion in two subsequent decisions. In *Logan Valley*, the Supreme Court held that a privately owned shopping center could not prohibit striking workers from picketing a store within the shopping center because that prohibition violated the First Amendment rights of the picketing workers. *Id.* at 325. In reaching this holding, the Supreme Court emphasized that the shopping center was "open to the public to the same extent as the commercial center of a normal town" and analogized the case to *Marsh*. *Id.* at 319. Specifically, the Supreme Court observed that the shopping center was "clearly the functional equivalent of the business district of [the company town] involved in *Marsh*." *Id.* at 318. Further, the Supreme Court rejected the shopping center's argument that it was not a state actor because it was privately owned by "simply repeat[ing]" the broad language in *Marsh* discussed above: "'The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights before circumscribed by the statutory and constitutional rights of those who use it.'" 391 U.S. at 325 (quoting *Marsh*, 326 U.S. at 506).

Justice Black—who wrote the majority opinion in *Marsh*—authored a vigorous dissent in *Logan Valley* asserting that the majority opinion had "completely misread[]" *Marsh*. *Id.* at 332 (Black, J., dissenting). In particular, Justice Black argued that "[t]he question is, Under what

12

1   circumstances can private property be treated as though it were public?  The answer that *Marsh*

2   gives is when that property has taken on all the attributes of a town, i.e., 'residential buildings,

3   streets, a system of sewers, a sewage disposal plant and a business block on which business places

4   are situated.'"  *Id.* (quoting *Marsh*, 326 U.S. at 502).  Justice Black further argued that "nothing in

5   *Marsh* [] indicates that if one these features is present, e.g., a business district, this is sufficient for

6   the Court to confiscate a part of an owner's private property and give its use to people who want to

7   picket on it."  *Id.*  In Justice Black's view, *Marsh* "dealt with the very special situation of a

8   company-owned town" and "was never intended to apply" outside of that context.  *Id.* at 330.

9       It took the United States Supreme Court all of eight years to explicitly overturn its holding

10  in *Logan Valley* and adopt Justice Black's dissent.  First, four years after *Logan Valley*, in *Lloyd*

11  *Corp. v. Tanner*, 407 U.S. 551 (1972), the Supreme Court addressed a situation that was very

12  similar to *Logan Valley* and held that a privately owned shopping center could prohibit anti-

13  Vietnam War protestors from distributing literature in the shopping center because it was not a

14  state actor that was required to comply with the First Amendment.  *Id.* at 570.  In reaching this

15  holding, the Supreme Court quoted Justice Black's assertion in his *Logan Valley* dissent that

16  *Marsh* "'was never intended to apply'" outside "'the very special situation of a company-owned

17  town.'"  *Id.* at 562–63 (quoting *Marsh*, 326 U.S. at 502).  Further, the Supreme Court

18  distinguished *Marsh* and rejected the argument that because the shopping center had "sidewalks,

19  streets, and parking areas which are functionally similar to facilities customarily provided by

20  municipalities," "all members of the public, whether invited as customers or not, have the same

21  right of free speech [in the shopping center] as they would have on the similar public facilities in

22  the streets of a city or town."  *Id.* at 569.  Specifically, the *Lloyd* Court observed that *Marsh*

23  "involved the assumption by a private enterprise of all of the attributes of a state-created

24  municipality and the exercise by that enterprise of semiofficial municipal functions as a delegate

25  of the State," such that "the owner of the company town was performing the full spectrum of

26  municipal powers and stood in the shoes of the State."  *Id.*  The *Lloyd* Court then explained that

27  Case No. 17-CV-06064-LHK

28  ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    the privately owned shopping center that was open to the public in *Lloyd* involved "no comparable

2    assumption or exercise of municipal functions or power." *Id.*

3        Second, although the United States Supreme Court did not explicitly overrule *Logan*

4    *Valley* in *Lloyd*, it did so four years after *Lloyd* in *Hudgens v. N.L.R.B.*, 424 U.S. 507 (1976).

5    Once again, like in *Logan Valley*, the Supreme Court was tasked with addressing whether a

6    privately owned shopping center that had prohibited labor union members from picketing in the

7    shopping center was a state actor that was required to comply with the First Amendment. *See id.*

8    at 508.  Ultimately, the Supreme Court concluded that the privately owned shopping center was

9    not a state actor, and thus the picketers "did not have a First Amendment right to enter th[e]

10   shopping center for the purpose of advertising their strike." *Id.* at 520–21.  In reaching this

11   holding, the *Hudgens* Court explained that "the rationale of *Logan Valley* did not survive the

12   Court's decision in the *Lloyd* case" and that "the ultimate holding in *Lloyd* amounted to a total

13   rejection of the holding in *Logan Valley*." *Hudgens*, 424 U.S. at 518.  Further, like in *Lloyd*,

14   *Hudgens* quoted at length from Justice Black's *Logan Valley* dissent. *Id.* at 516–17.  As the

15   Supreme Court would observe two years later in *Flagg Brothers*, *Hudgens* "adopted Mr. Justice

16   Black's interpretation of the limited reach of *Marsh*" expressed in his *Logan Valley* dissent. *Flagg*

17   *Bros.*, 436 U.S. at 159.

18       In short, *Logan Valley*, *Lloyd*, *Hudgens*, and *Flagg Brothers* confirm that *Marsh*'s reach is

19   limited. *See also Cable Invs., Inc. v. Woolley*, 867 F.2d 151, 162 (3d Cir. 1989) ("*Marsh* has been

20   construed narrowly." (citing *Flagg Bros*, 436 U.S. at 158–59, and *Hudgens*, 424 U.S. at 513–21));

21   *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 353 (N.D.N.Y. 2014) ("The holding in *Marsh* has

22   been limited to the facts of that case." (citing *Lloyd*, 407 U.S. at 561)).  In light of the ill-fated (and

23   short-lived) extension of *Marsh* to privately owned shopping centers held open to the public and

24   the United States Supreme Court's subsequent adoption of Justice Black's view that *Marsh* "was

25   never intended to apply" outside "the very special situation of a company-owned town," *Logan*

26   *Valley*, 391 U.S. at 330 (Black, J., dissenting), this Court is not convinced that *Marsh* can be

27                                              14

28   ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
     DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
     A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1   extended to support Plaintiff's contention that Defendants should be treated as state actors subject

2   to First Amendment scrutiny merely because they hold out and operate their private property as a

3   forum for expression of diverse points of view.  Opp. at 18.

4           Plaintiff also cites to the United States Supreme Court's recent opinion in *Packingham v.*

5   *North Carolina*, 137 S. Ct. 1730 (2017), but that case also does not support Plaintiff's position.  In

6   *Packingham*, the Supreme Court invalidated a North Carolina state law that made it a felony for a

7   registered sex offender to access any social media website that permitted minors to become

8   members as violative of the First Amendment's Free Speech Clause.  *Id.* at 1738.  Although

9   *Packingham* spoke of "cyberspace" and "social media in particular" as "the most important places

10  . . . for the exchange of views" in modern society, *id.* at 1735–36, *Packingham* did not, and had no

11  occasion to, address whether *private social media corporations* like YouTube are state actors that

12  must regulate the content of their websites according to the strictures of the First Amendment.

13  Instead, as discussed above, *Packingham* concerned whether *North Carolina* ran afoul of the First

14  Amendment by enacting a statute that prohibited certain persons from using certain social media

15  websites.  *See also Nyabwa v. Facebook*, 2018 WL 585467, *1 (S.D. Tex. Jan. 26, 2018)

16  ("Although the Court recognized in *Packingham* . . . that social media sites like Facebook and

17  Twitter have become the equivalent of a public forum for sharing ideas and commentary, the

18  Court did not declare a cause of action against a private entity such as Facebook for a violation of

19  the free speech rights protected by the First Amendment.").

20          Plaintiff's citations to *Denver Area Educational Telecommunications Consortium, Inc. v.*

21  *FCC*, 518 U.S. 727 (1996), and *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*,

22  473 U.S. 788 (1985), are unavailing for similar reasons.  Although both cases mentioned that

23  public forums may include "private property dedicated to public use," *see Denver Area*, 518 U.S.

24  at 749; *Cornelius*, 473 U.S. at 801, both cases addressed whether certain speech restrictions

25  enacted *by the federal government* violated the First Amendment.  Specifically, *Denver Area*

26  involved a challenge to a federal statute regulating the broadcasting of offensive "sex-related

27                                                    15

28  Case No. 17-CV-06064-LHK
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
    DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
    A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    material on cable television," 518 U.S. at 732, while *Cornelius* addressed a challenge to an

2    executive order that excluded "legal defense and political advocacy organizations" from

3    participating in a "charity drive aimed at federal employees." 473 U.S. at 790. Therefore, neither

4    case addressed the circumstances in which a private property owner must be treated as a state actor

5    for constitutional purposes.

6         In sum, Plaintiff has not shown that Defendants have engaged in one of the "very few"

7    public functions that were traditionally "exclusively reserved to the State." *Flagg Bros.*, 436 U.S.

8    at 158. Defendants do not appear to be at all like, for example, a private corporation that governs

9    and operates all municipal functions for an entire town, *see Marsh*, 326 U.S. at 507–09, or one that

10   has been given control over a previously public sidewalk or park, *see Evans v. Newton*, 382 U.S.

11   296 (1966), or one that has effectively been delegated the task of holding and administering public

12   elections, *see Smith v. Allwright*, 321 U.S. 649, 664 (1944). Instead, Defendants are private

13   entities who created their own video-sharing social media website and make decisions about

14   whether and how to regulate content that has been uploaded on that website. Numerous other

15   courts have declined to treat similar private social media corporations, as well as online service

16   providers, as state actors. *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (3d Cir. 2000) (rejecting

17   argument that AOL should be deemed a state actor because it is a "quasi-public utility" that

18   "involves a public trust"); *Nyabwa*, 2018 WL 585467 at *1 ("Because the First Amendment

19   governs only governmental restrictions on speech, Nyabwa has not stated a cause of action against

20   Facebook."); *Shulman v. Facebook.com*, 2017 WL 5129885, *4 (D.N.J. Nov. 6, 2017) (rejecting

21   the plaintiff's constitutional claims against Facebook for failure to sufficiently allege that

22   Facebook is a state actor); *Kinderstart.com LLC v. Google, Inc.*, 2007 WL 831806, *13–15 (N.D.

23   Cal. Mar. 16, 2007) (rejecting arguments that Google is a state actor for constitutional purposes);

24   *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631–32 (D. Del. 2007) (finding that Google is a

25   private entity that is "not subject to constitutional free speech guarantees" and asserting that the

26   United States Supreme Court "has routinely rejected the assumption that people who want to

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1   express their views in a private facility, such as a shopping center, have a constitutional right to do

2   so"); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 442 (E.D. Pa. 1996) ("AOL

3   has not opened its property to the public by performing any municipal power or essential public

4   service and, therefore, does not stand in the shoes of the State.").  The Court likewise declines to

5   find that Defendants in the instant case are state actors that must regulate the content on their

6   privately created website in accordance with the strictures of the First Amendment.  As a result,

7   the Court concludes that Plaintiff has failed to state a claim against Defendants under the First

8   Amendment.

9        Accordingly, the Court GRANTS Defendants' motion to dismiss (1) Plaintiff's substantive

10   cause of action for violation of the First Amendment; and (2) Plaintiff's claim for declaratory

11   relief, to the extent that it is premised on a violation of the First Amendment.  The Court affords

12   leave to amend because Plaintiff may be able to allege sufficient facts to support a First

13   Amendment claim.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave

14   to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

15   other facts" (internal quotation marks omitted)).

16        **b.  Lanham Act**

17        Plaintiff also asserts a cause of action against Defendants for false advertising in violation

18   of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Section 1125(a)(1)(B) forbids a person from

19   making any false or misleading statements of fact "in commercial advertising or promotion" that

20   "misrepresent[] the nature, characteristics, qualities or geographic origin of his or her or another

21   person's goods, services, or commercial activities."  In order to prevail on a false advertising claim

22   under § 1125(a)(1)(B), a plaintiff must demonstrate: "(1) false statement of fact by the defendant

23   in a commercial advertisement about its own or another's product; (2) the statement actually

24   deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is

25   material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false

26   statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a

27                                                                17

28   Case No. 17-CV-06064-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
     DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
     A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citations omitted).  For purposes of § 1125(a)(1)(B), a representation by a defendant amounts to "commercial advertising or promotion" only if it was (1) commercial speech; (2) made "for the purpose of influencing consumers to buy defendant's goods or services"; and (3) "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y 1994)).  However, the representation "need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion.'" *Id.*

Although the section of Plaintiff's complaint dedicated to the Lanham Act does not identify any specific representations made by Defendants, *see* Compl. ¶¶ 115–19, Plaintiff's opposition to Defendants' motion to dismiss points to a handful of discrete alleged instances of false advertising by Defendants.  Opp. at 24.  In particular, Plaintiff identifies (1) YouTube's suggestion that some of Plaintiff's videos are "inappropriate"; (2) YouTube's policies and guidelines for regulating video content; (3) YouTube's statement that "voices matter" and that YouTube is "committed to fostering a community where everyone's voice can be heard"; (4) YouTube's statement on its "Official Blog" that YouTube's "mission" is to "give people a voice" in a "place to express yourself" and in a "community where everyone's voice can be heard," and that YouTube is "one of the largest and most diverse collections of self-expression in history" that gives "people opportunities to share their voice and talent no matter where they are from or what their age or point of view"; and (5) Defendants' representations in the terms of the agreements between Plaintiff and Defendants that Defendants seek to "help you grow," "discover what works best for you," and "giv[e] you tools, insights and best practices for using your voice and videos." *Id.* (citing Compl. ¶¶ 3, 11, 14, 28, 104, 112).  The Court agrees with Defendants that Plaintiff has

18

failed to allege sufficient facts to support a Lanham Act false advertising claim based on any of these representations.  The Court addresses each representation in turn.

### i.   Implying that Plaintiff's Videos are "Inappropriate"

Plaintiff appears to argue that Defendants engaged in false advertising by deciding to exclude some of Plaintiff's videos from YouTube's Restricted Mode.  Specifically, Plaintiff asserts that "when Defendants restrict [Plaintiff's] videos, they send clear but false signals to all users and controllers of Restricted Mode that [Plaintiff's] videos contain content that is inappropriate for younger viewers."  Opp. at 25.  However, as Defendants point out, Plaintiff has not "pointed to anything that YouTube said publicly about its classification of those videos."  Reply at 15.  For example, there is no indication that in addition to ensuring that some of Plaintiff's videos are not accessible to Restricted Mode users, Defendants also publish statements notifying Restricted Mode users that those specific videos have been deemed to be inappropriate or unsuitable for certain viewers.  *See, e.g.*, *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, *1 (N.D. Cal. Dec. 2, 2015) (rejecting a claim that "YouTube's posting of a notice that [a] video had been removed because it violated YouTube's Terms of Service" amounted to false advertising in violation of the Lanham Act).  All that Plaintiff's complaint alleges is that by restricting access to some of Plaintiff's videos, Defendants have falsely *implied*—or, in Plaintiff's words, have "sen[t] clear but false *signals*," Opp. at 25—that those videos are inappropriate.

The Court does not see how the mere implications that flow from Defendants' decisions to restrict access to some of Plaintiff's videos can constitute "commercial advertising or promotion" within the meaning of the Lanham Act.  15 U.S.C. § 1125(a)(1)(B).  Even assuming that these implications can be considered false statements under § 1125(a)(1)(B), Plaintiff alleges no facts that remotely suggest that Defendants restricted access to Plaintiff's videos for any "promotional purpose."  *Darnaa*, 2015 WL 7753406 at *8 (finding that allegations were insufficient to plausibly suggest that YouTube's notice that a video had been removed for violating YouTube's terms of service was published for a "promotional purpose").  Put another way, Plaintiff's factual

19

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1 allegations do not plausibly suggest that Defendants restricted access to some of Plaintiff's videos

2 "as part of an organized campaign to penetrate the relevant market," which the Second Circuit has

3 stated is "the touchstone of whether a defendant's actions may be considered 'commercial

4 advertising or promotion' under the Lanham Act." *Fashion Boutique of Short Hills, Inc. v. Fendi*

5 *USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). Further, there is no indication that word of Defendants'

6 restriction decisions regarding Plaintiff's videos was "disseminated sufficiently to the relevant

7 purchasing public to constitute 'advertising' or 'promotion'" by Defendants. *Coastal Abstract*,

8 173 F.3d at 735. As a result, Plaintiff has failed to state a cause of action under the Lanham Act

9 based on Defendants' decisions to restrict access to some of Plaintiff's videos.

10 **ii.   YouTube's Policies and Guidelines**

11 As discussed above, Plaintiff alleges that Defendants restrict access to content on YouTube

12 based on a number of policies and guidelines. These guidelines contain criteria "for determining

13 whether [the video's] content warrants" some sort of restricted access. Compl. ¶ 42. For example,

14 the "Restricted Mode Guidelines" look to, among other things, whether a video contains

15 "[g]raphic descriptions of violence," "inappropriate language," and "[o]verly detailed

16 conversations about or depictions of sex or sexual activity." *Id.*

17 In its opposition to Defendants' motion to dismiss, Plaintiff appears to assert that these

18 policies and guidelines amount to false advertising on the part of Defendants. Opp. at 24 ("As

19 Defendants concede, the Complaint references YouTube's policies and guidelines . . . ."). 

20 However, even assuming that the policies and guidelines could be considered "false statement[s]

21 of fact" *Southland Sod*, 108 F.3d at 1139, presumably on the theory that Defendants allegedly

22 apply them as a "pretext to censor and restrict [Plaintiff's] speech," Compl. ¶ 79, Defendants

23 correctly point out that Plaintiff has not alleged sufficient facts to plausibly suggest that these

24 policies and guidelines amounted to or were contained in "commercial advertising or promotion"

25 within the meaning of 15 U.S.C. § 1125(a)(1)(B). Mot. at 24. Like with Defendants' decisions to

26 restrict access to some of Plaintiff's videos, there is no indication from Plaintiff's complaint that

27

20

28

Defendants' policies and guidelines, which ostensibly inform YouTube's users about the criteria Defendants use to regulate uploaded content on YouTube, were created and published for any "promotional purpose," *Darnaa*, 2015 WL 7753406 at *8, or were disseminated as part of a "more informal type[] of 'promotion,'" *Coastal Abstract*, 173 F.3d at 735, or were published as "part of an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 57. Instead, Defendants' policies and guidelines are more akin to instruction manuals for physical products, which "are not advertisements or promotions" within the meaning of § 1125(a)(1)(B). *Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, 2017 WL 931712 (D.N.J. Mar. 9, 2017).

In addition to failing to allege that Defendants' policies and guidelines constitute "commercial advertising or promotion," Plaintiff has also failed to sufficiently plead that it "has been or is likely to be injured as a result of the" (allegedly false) policies and guidelines. *Southland Sod*, 108 F.3d at 1139.  Although Plaintiff asserts that it has suffered injury in the form of "lower viewership, decreased ad revenue, a reduction in advertisers willing to purchase advertisements shown on Plaintiff's videos, diverted viewership, and damage to its brand, reputation and goodwill," Compl. ¶ 118, nothing in Plaintiff's complaint suggests that this harm flowed directly from Defendants' publication of their policies and guidelines.  Instead, any harm that Plaintiff suffered was caused by Defendants' decisions to limit access to some of Plaintiff's videos, which, as the Court explained above, are not actionable as false advertisements under the Lanham Act.  As a result, Plaintiff has failed to state a Lanham Act false advertising claim based on Defendants' policies and guidelines.

### iii. YouTube's Statements About Its Viewpoint Neutrality

Next, Plaintiff alleges that Defendants violated the Lanham Act by falsely advertising YouTube "as a forum for open expression by diverse speakers" and "an equal and diverse public forum," Compl. ¶ 117, when in reality Defendants engaged in viewpoint discrimination against Plaintiff.  Opp. at 24.  In particular, Plaintiff identifies the following statements made by YouTube: (1) "voices matter" and YouTube is "committed to fostering a community where

21

United States District Court
Northern District of California

everyone's voice can be heard," Compl. ¶ 3; (2) YouTube's "mission" is to "give people a voice" in a "place to express yourself" and in a "community where everyone's voice can be heard," *id.* ¶ 28 (quoting YouTube's "Official Blog"); and (3) YouTube is "one of the largest and most diverse collections of self-expression in history" that gives "people opportunities to share their voice and talent no matter where they are from or what their age or point of view." *Id.* (quoting YouTube's "Official Blog").

The Court finds that all of these statements constitute mere "puffery" and are therefore not actionable under the Lanham Act. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (affirming a district court's finding that a statement amounted to "puffing" that was non-actionable under the Lanham Act). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance," *id.*, or if it is so vague that it is not "capable of being proved false." *Coastal Abstract*, 173 F.3d at 731. "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus.*, 513 F.3d at 1053. A statement that is "quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general subjective claim about a product is non-actionable puffery." *Id.* (quoting *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)); *see also Cook*, 911 F.2d at 246 ("In *Smith-Victor*, an advertiser's statement that its lamps were 'far brighter than any lamp ever before offered for home movies' was ruled puffery. However, when the advertiser quantified numerically the alleged superior brightness with statements such as '35,000 candle power and 10-hour life,' the court found a potential Lanham Act claim.").

None of the statements about YouTube's viewpoint neutrality identified by Plaintiff resembles the kinds of "quantifiable" statements about the "specific or absolute characteristics of a product" that are actionable under the Lanham Act. *Newcal Indus.*, 513 F.3d at 1053. Rather, the statements are vague representations about how YouTube is generally "committed to fostering a community where everyone's voice can be heard" and providing "opportunities" for people from

22

United States District Court
Northern District of California

all over to share their diverse "point[s] of view."  Compl. ¶¶ 3, 28.  The statements do not say

anything specific about YouTube's "mission" to "give people a voice," and make no concrete and

measurable guarantees or representations about the "opportunities" made available for people to

express themselves "no matter where they are from or what their age or point of view."  *Id.* ¶ 28.

As a result, the Court concludes that these statements are neither "[]likely to induce consumer

reliance," *Newcal Indus.*, 513 F.3d at 1053, nor "capable of being proved false," *Coastal Abstract*,

173 F.3d at 731, and are therefore non-actionable puffery under the Lanham Act.

Further, like with YouTube's policies and guidelines, Plaintiff has not sufficiently alleged

that it "has been or is likely to be injured as the result of the" statements about YouTube's

viewpoint neutrality.  *Southland Sod*, 108 F.3d at 1139.  As discussed above, any harm that

Plaintiff suffered was caused by Defendants' decisions to limit access to some of Plaintiff's

videos, which are also not actionable as false advertisements under the Lanham Act.  For these

reasons, the Court finds that Plaintiff has not sufficiently pled a false advertising claim under the

Lanham Act based on Defendants' statements about YouTube's viewpoint neutrality.

### iv.  Terms of Agreements Between Plaintiff and Defendants

Finally, Plaintiff states that it relied on false representations contained in the terms of

certain agreements between Plaintiff and Defendants, and argues that those representations amount

to false advertising under the Lanham Act.  Opp. at 24 (citing Compl. ¶ 112).  Specifically,

Plaintiff points to Defendants' representations that Defendants endeavor to "help you grow,"

"discover what works best for you," and "giv[e] you tools, insights and best practices for using

your voice and videos."  Compl. ¶ 112.  Plaintiff alleges that these false representations induced

Plaintiff to "cho[o]se YouTube as the host of its videos."  *Id.*

The Court finds that Plaintiff falls well short of stating a false advertising claim based on

these representations.  First, like the statements about YouTube's viewpoint neutrality, these

representations are vague, general statements about YouTube's services that amount to no more

than puffery.  Once again, there is nothing quantifiable or specific about Defendants' endeavor to

23

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1   "help [Plaintiff] grow" and "giv[e] [Plaintiff] tools, insights and best practices."  Compl. ¶ 112.

2   The representations give no detail as to what specific "tools, insights and best practices" will be

3   provided and the ways in which Defendants will "help you grow."  As a result, these general

4   representations constitute puffery that is not actionable under the Lanham Act.  *See Newcal Indus.*,

5   513 F.3d at 1053 (affirming a district court's finding that a statement amounted to "puffing" that

6   was non-actionable under the Lanham Act).

7          Second, and more importantly, even if the representations in the agreement terms

8   amounted to more than mere puffery, Plaintiff lacks statutory standing to assert a Lanham Act

9   false advertising claim based on those representations.  In *Lexmark International, Inc. v. Static*

10  *Control Components, Inc.*, 134 S. Ct. 1377 (2014), the United States Supreme Court took on the

11  task of determining "the appropriate analytical framework for determining a party's standing to

12  maintain an action for false advertising under the Lanham Act."  *Id.* at 1385.  The Supreme Court

13  explained that "a statutory cause of action extends only to plaintiffs whose interests 'fall within the

14  zone of interests protected by the law invoked.'"  *Id.* at 1388 (quoting *Allen v. Wright*, 468 U.S.

15  737, 751 (1984).  Then, the Supreme Court analyzed "the interests protected by the Lanham Act"

16  and surmised that the Act's focus was clearly on protecting businesses against "unfair

17  competition"—that is, "injuries to business reputation and present and future sales."  *Id.* at 1389–

18  90.  Based on this analysis, the Supreme Court held that "to come within the zone of interests in a

19  suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest

20  in reputation or sales."  *Id.* at 1390.  Additionally, as relevant to the instant case, the Court further

21  explained that "[a] consumer who is hoodwinked into purchasing a disappointing product may

22  well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the

23  Lanham Act—a conclusion reached by every Circuit to consider the question."  *Id.*

24         As discussed above, Plaintiff's complaint alleges that Defendants' false representations

25  about "help[ing] you grow" and "giv[ing] you tools, insights and best practices for using your

26  voice and videos" induced Plaintiff to "cho[o]se YouTube as the host of its videos."  Compl. ¶

27  24

Case No. 17-CV-06064-LHK

28  ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

United States District Court
Northern District of California

112.  Thus, to the extent that Plaintiff's Lanham Act claim is based on these allegedly false representations, Plaintiff is suing Defendants as a consumer of Defendants' video-hosting services. In other words, Plaintiff is clearly asserting that it was "hoodwinked" by Defendants' representations "into [using] a disappointing" video-hosting service (YouTube).  *Lexmark*, 134 S. Ct. at 1390.  However, the United States Supreme Court confirmed in *Lexmark* that a consumer in Plaintiff's position "cannot invoke the protection of the Lanham Act."  *Id.*  For these reasons, the Court concludes that Plaintiff has failed to state a Lanham Act claim based on the allegedly false representations in the terms of agreements between Plaintiff and Defendants.

Accordingly, the Court GRANTS Defendants' motion to dismiss (1) Plaintiff's cause of action for violation of the Lanham Act; and (2) Plaintiff's claim for declaratory relief, to the extent that it is premised on a violation of the Lanham Act.  The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to support a Lanham Act claim.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 2.  State Law Causes of Action

Plaintiff's remaining claims are based on state law.  Specifically, Plaintiff asserts four substantive state law causes of action for: (1) violation of Article I, section 2 of the California Constitution; (2) violation of the Unruh Act; (3) violation of the UCL; and (4) breach of the implied covenant of good faith and fair dealing.  Further, Plaintiff's claim for declaratory relief is based in part on Defendants' alleged violations of Article I, section 2 of the California Constitution and the Unruh Act.

A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Conversely, a court may decline to exercise supplemental jurisdiction where it "has

United States District Court
Northern District of California

25

United States District Court
Northern District of California

1    dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also*

2    *Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937–38 (9th Cir. 2003) (as

3    amended) (holding that Section 1367(c) grants federal courts the discretion to dismiss state law

4    claims when all federal claims have been dismissed).  In considering whether to retain

5    supplemental jurisdiction, a court should consider factors such as "economy, convenience,

6    fairness, and comity."  *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc)

7    (citations and internal quotation marks omitted).  However, "in the usual case in which all federal-

8    law claims are eliminated before trial, the balance of factors . . . will point toward declining to

9    exercise jurisdiction over the remaining state law claims."  *Exec. Software N. Am., Inc. v. U.S.*

10   *Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other*

11   *grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

12           Here, the factors of economy, convenience, fairness, and comity support dismissal of

13   Plaintiff's remaining state law claims.  This case is still at the pleading stage, and no discovery has

14   taken place.  Federal judicial resources are conserved by dismissing the state law theories of relief

15   at this stage.  Further, the Court finds that dismissal promotes comity as it enables California

16   courts to interpret questions of state law.  This is an especially important consideration in the

17   instant case because Plaintiff asserts a claim that demands an analysis of the reach of Article I,

18   section 2 of the California Constitution in the age of social media and the Internet.

19           Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state

20   law claims, and instead DISMISSES those claims.[3]  The Court provides leave to amend because

21   Plaintiff may be able to plead a federal cause of action that warrants the Court's exercise of

22   supplemental jurisdiction.

23   **B.  Plaintiff's Motion for a Preliminary Injunction**

24

25   _____

     [3] Although Plaintiff's complaint invokes the Declaratory Judgment Act, *see* Compl. ¶ 24, that Act
     "does not by itself confer federal subject-matter jurisdiction."  *Nationwide Mut. Ins. Co. v.*

26   *Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).  As a result, Plaintiff's citation to the Declaratory
     Judgment Act does not confer subject matter jurisdiction over Plaintiff's state law claims.

27                                                        26

28   Case No. 17-CV-06064-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION;
     DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR
     A PRELIMINARY INJUNCTION

Plaintiff filed a motion for a preliminary injunction based on its causes of action for (1) violation of the First Amendment; (2) violation of Article I, section 2 of the California Constitution; (3) violation of the Unruh Act; (4) violation of the UCL; and (5) breach of the implied covenant of good faith and fair dealing.  ECF No. 24 at 2.  However, the Court has already dismissed the entirety of Plaintiff's complaint with leave to amend.  Thus, Plaintiff has not shown that Plaintiff is "likely to succeed on the merits" of its claims.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  As a result, the Court DENIES without prejudice Plaintiff's motion for a preliminary injunction.  *See Physician's Surrogacy, Inc. v. German*, 2017 WL 3622329, * 12 (S.D. Cal. Aug. 23, 2017) (denying without prejudice motion for preliminary injunction because the court dismissed without prejudice all federal claims and declined to exercise supplemental jurisdiction over the state law claims); *Shames v. Hertz Corp.*, 2008 WL 11318291, *5 (S.D. Cal. Apr. 8, 2008) (same).

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's federal causes of action with leave to amend, DISMISSES Plaintiff's state law claims with leave to amend, and DENIES Plaintiff's motion for a preliminary injunction without prejudice.  Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order.  Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims.  Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 26, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 17-CV-06064-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FEDERAL CAUSES OF ACTION; DISMISSING PLAINTIFF'S STATE LAW CAUSES OF ACTION; AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

United States District Court
Northern District of California