**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRAGER UNIVERSITY,
            *Plaintiff-Appellant*,

v.

GOOGLE LLC, FKA Google, Inc.;
YOUTUBE, LLC,
            *Defendants-Appellees.*

No. 18-15712

D.C. No.
5:17-cv-06064-
LHK

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted August 27, 2019
Seattle, Washington

Filed February 26, 2020

Before:  M. Margaret McKeown and Jay S. Bybee, Circuit
Judges, and Fernando J. Gaitan, Jr.,[*] District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Fernando J. Gaitan, Jr., United States District Judge
for the Western District of Missouri, sitting by designation.

**SUMMARY**[**]

**Civil Rights**

The panel affirmed the district court's dismissal of an action brought against YouTube and its parent company, Google, LLC, by a nonprofit educational and media organization alleging a violation of the First Amendment and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as various state law claims.

Addressing the First Amendment claims, the panel held that despite YouTube's ubiquity and its role as a public-facing platform, it remains a private forum, not a public forum subject to judicial scrutiny under the First Amendment. The panel noted that just last year, the Supreme Court held that "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019). The panel held that the Internet does not alter this state action requirement of the First Amendment. The panel therefore rejected plaintiff's assertion that YouTube is a state actor because it performs a public function.

Addressing the false advertising claim under the Lanham Act, the panel held that YouTube's statements concerning its content moderation policies do not constitute "commercial advertising or promotion" as the Lanham Act requires. Nor was YouTube's designation of certain of plaintiff's videos

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for Restricted Mode part of an advertising or promotion or a misrepresentation as to the videos.  Finally, the panel held that YouTube's braggadocio about its commitment to free speech constituted opinions that are not subject to the Lanham Act.

**COUNSEL**

Peter Obstler (argued), Browne George Ross LLP, San Francisco, California; Pete Wilson and Eric M. George, Browne George Ross LLP, Los Angeles, California; for Plaintiff-Appellant.

Brian M. Willen (argued), Wilson Sonsini Goodrich & Rosati, New York, New York; David H. Kramer, Lauren Gallo White, and Amit Q. Gressel, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; for Defendants-Appellees.

Colleen E. Roh Sinzdak, Hogan Lovells US LLP, Washington, D.C.; Daryl Joseffer and Jonathan D. Urick, National Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

David Greene and Sophia Cope, Electronic Frontier Foundation, San Francisco, California, for Amicus Curiae Electronic Frontier Foundation.

Donald B. Verrilli Jr. and Chad Golder, Munger Tolles & Olson LLP, Washington, D.C., for Amicus Curiae The Computer & Communications Industry Association.

## OPINION

McKEOWN, Circuit Judge:

Using private property as a forum for public discourse is nothing new.  Long before the Internet, people posted announcements on neighborhood bulletin boards, debated weighty issues in coffee houses, and shouted each other down in community theaters.  Juxtaposed with today's digital platforms, these analog means seem quaint. YouTube, LLC alone has more than 1.3 billion users—more than 30 million visitors every day—and 400 hours of video uploaded every hour.

Despite YouTube's ubiquity and its role as a public-facing platform, it remains a private forum, not a public forum subject to judicial scrutiny under the First Amendment.  Prager University ("PragerU") sees things differently and claims YouTube's outsize power to moderate user content is a threat to the fair dissemination of "conservative viewpoints and perspectives on public issues," and that YouTube has become a public forum.

PragerU runs headfirst into two insurmountable barriers—the First Amendment and Supreme Court precedent.  Just last year, the Court held that "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1930 (2019).  The Internet does not alter this state action requirement of the First Amendment.  We affirm the district court's dismissal of PragerU's complaint.

## BACKGROUND[1]

PragerU is a nonprofit educational and media organization with a mission to "provide conservative viewpoints and perspective on public issues that it believes are often overlooked." PragerU does not confer certificates or degrees. Instead, the organization creates short videos for high-school, college, and graduate school-age audiences and shares them on the Internet. PragerU has posted hundreds of its videos on a broad range of socio-political issues on YouTube.

YouTube hosts user-generated videos and related content on its eponymous platform. YouTube is "the world's largest forum in which the public may post and watch video based content." Around 400 hours of video content are uploaded to the platform hourly. Indeed, "more video content has been uploaded" to YouTube "than has been created by the major U.S. television networks in 30 years." "[M]ore than 500 million hours" of those videos are watched each day.

YouTube invites the public to post video and other content on its platform and is "committed to fostering a community where everyone's voice can be heard." Subject to the Terms of Service and Community Guidelines that a user must accept before posting a video, YouTube has reserved the right to remove or restrict content. YouTube may remove content that violates its Terms of Service, or restrict otherwise objectionable videos (even if they do not violate the Terms of Service), such as those deemed to be age-inappropriate.

---

[1] This background is based on PragerU's complaint.

At issue here is YouTube's Restricted Mode, which, when activated by a user, makes unavailable certain age-inappropriate content. In addition to individual users, institutions such as libraries, schools, and businesses can turn on Restricted Mode. On average, 1.5–2% of users view YouTube through Restricted Mode.

According to YouTube's "Restricted Mode Guidelines," videos that contain potentially mature content—such as videos about "[d]rugs and alcohol," "[s]exual situations," "[v]iolence" (including "natural disasters and tragedies, or even violence in the news"), and other "[m]ature subjects" (such as "[v]ideos that cover specific details about events related to terrorism, war, crime, and political conflicts")—may become unavailable in Restricted Mode. The tagging is done either by an automated algorithm that examines certain signals like "the video's metadata, title, and the language used in the video," or manually by a user. When a video is tagged, YouTube informs the content creator, who may appeal the classification. YouTube's human reviewers then evaluate the decision.

YouTube tagged several dozen of PragerU's videos as appropriate for the Restricted Mode. YouTube also "demonetized" some of PragerU's videos, which means third parties cannot advertise on those videos. PragerU appealed the classifications through YouTube's internal process, but at least some of the videos remain restricted or demonetized.

PragerU sued YouTube and its parent company, Google, LLC, on two federal claims—violation of the First Amendment, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)—as well as various state law claims.

The district court denied PragerU's motion for preliminary injunction to compel YouTube to declassify the restricted videos.  The court also granted YouTube's motion to dismiss, with leave to amend the federal claims.  Instead of filing an amended complaint, PragerU appealed.

## ANALYSIS

### I.  THE FIRST AMENDMENT CLAIM

PragerU's claim that YouTube censored PragerU's speech faces a formidable threshold hurdle: YouTube is a private entity.   The Free Speech Clause of the First Amendment prohibits the government—not a private party—from abridging speech.  *See Halleck*, 139 S.Ct. at 1928 (the Free Speech Clause "prohibits only *governmental* abridgment of speech," and "does not prohibit *private* abridgment of speech"); *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state").   PragerU does not dispute that YouTube is a private entity that operates its platform without any state involvement.[2]

These are not antiquated principles that have lost their vitality in the digital age.  In *Halleck* the Supreme Court

---

[2] PragerU's citation to cases involving the *government*'s regulation of online speech are inapposite.  Because the government was the relevant actor, state action was not contested.  *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1733–34 (2017) (state passed law making it a felony for registered sex offenders to use social media websites that can be accessed by minors); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 849, 859–60 (1997) (Congress passed statute criminalizing transmitting or displaying sexually explicit material to minors using the Internet).

considered whether a private entity that operates a public access channel on a cable system is a state actor. 139 S. Ct. at 1926. The plaintiffs tested a theory that resembled PragerU's approach, claiming that a private entity becomes a state actor through its "operation" of the private property as "a public forum for speech." *Id.* at 1930. The Court rejected this argument. Such a rule would eviscerate the state action doctrine's distinction between government and private entities because "all private property owners and private lessees who open their property for speech would be subject to First Amendment constraints." *Id.* at 1930–31. Instead, the Court reaffirmed that "merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Id.* at 1930.

Importantly, private property does not "lose its private character merely because the public is generally invited to use it for designated purposes." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972). YouTube may be a paradigmatic public square on the Internet, but it is "not transformed" into a state actor solely by "provid[ing] a forum for speech." *Halleck*, 129 S. Ct. at 1930, 1934.

Twenty years ago, in the early years of litigation involving the Internet, we held that a private entity hosting speech on the Internet is not a state actor. We concluded that America Online ("AOL")—a service that provided, among other things, internet service, web portal, and emails—was not "an instrument or agent of the government." *Howard v. Am. Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (internal quotation marks omitted); *see also Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (the "contention[] that AOL is transformed into a state actor … because AOL opens its network to the public whenever an AOL member

accesses the Internet and receives email or other messages from non-members of AOL" is unpersuasive). That principle has not changed. Although we have not recently spoken on the issue, other courts have uniformly concluded that digital internet platforms that open their property to user-generated content do not become state actors.[3] These cases follow the Supreme Court's state action precedent and are consistent with its recent teaching in *Halleck*.

In an effort to distinguish controlling precedent, PragerU argues that YouTube is a state actor because it performs a public function. It is true that a private entity may be deemed a state actor when it conducts a public function, but the relevant function "must be both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002). This test is difficult to meet. It is "not enough" that the relevant function is something that a government has "exercised … in the past, or still does" or "that the function serves the public good or the public interest in some way."

---

[3] *See, e.g.*, *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) ("Facebook and Twitter … are private businesses that do not become 'state actors' based solely on the provision of their social media networks to the public."), *appeal filed*, No. 19-7030 (D.C. Cir. 2019); *Green v. YouTube, LLC*, 2019 WL 1428890, at *4 (D.N.H. Mar. 13, 2019) (there is no "state action giving rise to the alleged violations of [the plaintiff's] First Amendment rights" by YouTube and other platforms that are "all private companies"); *Nyabwa v. FaceBook*, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) ("Because the First Amendment governs only governmental restrictions on speech, [the plaintiff] has not stated a cause of action against FaceBook."); *Shulman v. Facebook.com*, 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (Facebook is not a state actor); *Forbes v. Facebook, Inc.*, 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016) ("Facebook is a private corporation" whose actions may not "be fairly attributable to the state"); *Doe v. Cuomo*, 2013 WL 1213174, at *9 (N.D.N.Y. Feb. 25, 2013) (Facebook is not a state actor under the joint action test).

*Halleck*, 139 S.Ct. at 1928–29.  Rather, the relevant function must have been "traditionally the *exclusive* prerogative of the [s]tate."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotation marks omitted).  Indeed, "[w]hile many functions have been traditionally performed by governments," *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978), the lean list of the "very few" recognized public functions includes "running elections," "operating a company town," and not much else, *Halleck*, 139 S.Ct. at 1929 (internal quotation marks omitted); *see, e.g.*, *Terry v. Adams*, 345 U.S. 461, 468–70 (1953) (elections); *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946) (company town).

The relevant function performed by YouTube—hosting speech on a private platform—is hardly "an activity that only governmental entities have traditionally performed." *Halleck*, 139 S.Ct. at 1930.  Private parties like "[g]rocery stores" and "[c]omedy clubs" have "open[ed] their property for speech."  *Id.*  YouTube does not perform a public function by inviting public discourse on its property.  "The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use." *Lloyd Corp.*, 407 U.S. at 569.  Otherwise "every retail and service establishment in the country" would be bound by constitutional norms.  *Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 547 (1972) (private parking lots do not become state actors just because they are open to the public).

That YouTube is ubiquitous does not alter our public function analysis.  PragerU argues that the pervasiveness of YouTube binds it to the First Amendment because *Marsh* teaches that "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the … constitutional rights of those who use it."  326 U.S. at 506.  PragerU's

reliance on *Marsh* is not persuasive.  In *Marsh*, the Court held that a private entity operating a company town is a state actor and must abide by the First Amendment.  *Id.* at 505–08.   But in *Lloyd Corp.* and *Hudgens*, the Court unequivocally confined *Marsh*'s holding to the unique and rare context of "company town[s]" and other situations where the private actor "perform[s] the full spectrum of municipal powers."  *Lloyd Corp.*, 407 U.S. at 569; *see also Hudgens*, 424 U.S. at 518–20.

YouTube does not fit the bill.  Unlike the company town in *Marsh*, YouTube merely operates a platform for user-generated video content; it does not "perform[] all the necessary municipal functions," *Flagg Bros.*, 436 U.S. at 159, nor does it operate a digital business district that has "all the characteristics of any other American town," *Marsh*, 326 U.S. at 502.

YouTube also does not conduct a quintessential public function through regulation of speech on a *public forum*. *Lee*, 276 F.3d at 556 (the "functionally exclusive regulation of free speech within … a public forum[] is a traditional and exclusive function of the State").  To characterize YouTube as a public forum would be a paradigm shift.[4]

Shifting gears slightly, PragerU posits that a private entity can be converted into a public forum if its property is opened up for public discourse.[5]   This theory finds no

---

[4] PragerU's citation to *Lee* does not solve the state action problem. In *Lee*, the parties conceded that the property, which was owned by the municipal government, was a traditional public forum.  276 F.3d at 555–56.  No such concession or government involvement exists here.

[5] PragerU appears to conflate the *public forum* analysis for the threshold state action inquiry with the *designated public forum* analysis

support in our precedent. As the Supreme Court has explained, to create a public forum, the *government* must intentionally open up the property to public discourse. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse."). That YouTube is not owned, leased, or otherwise controlled by the government undermines PragerU's public forum theory. PragerU cannot avoid the state action question by calling YouTube a public forum. *Halleck*, 139 S.Ct. at 1930 (casting a private property as a public forum "ignores the threshold state-action question").

PragerU's attempt to foist a "public forum" label on YouTube by claiming that YouTube declared itself a public forum also fails. YouTube's representation that it is committed to freedom of expression, or a single statement made by its executive before a congressional committee that she considers YouTube to be a "neutral public fora," cannot somehow convert private property into a public forum. Whether a property is a public forum is not a matter of election by a private entity. We decline to subscribe to PragerU's novel opt-in theory of the First Amendment. *See Cent. Hardware*, 407 U.S. at 547.

Both sides say that the sky will fall if we do not adopt their position. PragerU prophesizes living under the tyranny

---

for determining the appropriate First Amendment balancing test. *See, e.g.*, *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975) (that a city-leased theater is a designated public forum determines the level of permitted speech regulation by the government). We interpret PragerU's use of the term "designated public forum" to mean "public forum" in the context of the state action doctrine.

of big-tech, possessing the power to censor any speech it does not like.  YouTube and several amicus curiae, on the other hand, foretell the undoing of the Internet if online speech is regulated.  While these arguments have interesting and important roles to play in policy discussions concerning the future of the Internet, they do not figure into our straightforward application of the First Amendment.  Because the state action doctrine precludes constitutional scrutiny of YouTube's content moderation pursuant to its Terms of Service and Community Guidelines, we affirm the district court's dismissal of PragerU's First Amendment claim.

## II. THE LANHAM ACT FALSE ADVERTISING CLAIM

PragerU's other federal claim—false advertising under the Lanham Act—also fails.  To establish a claim under 15 U.S.C. § 1125(a)(1)(B), PragerU must allege a "false or misleading representation of fact" "in commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 & n.2 (9th Cir. 1997).  Because none of the alleged statements are actionable under the Lanham Act, we affirm the district court's dismissal of this claim.

YouTube's statements concerning its content moderation policies do not constitute "commercial advertising or promotion" as the Lanham Act requires. 15 U.S.C. § 1125(a)(1)(B).  The statements about Restricted Mode were made to explain a user tool, not for a promotional purpose to "penetrate the relevant market" of the viewing public.  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725,

735 (9th Cir. 1999).   Not all commercial speech is promotional.  *Fashion Boutique of Short Hills*, 314 F.3d at 57 ("the language of the [Lanham] Act cannot be stretched so broadly as to encompass all commercial speech"). PragerU did not allege any facts to overcome the commonsense conclusion that representations related to Restricted Mode, such as those in the terms of service, community guidelines, and contracts are not advertisements or a promotional campaign.  *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001) (statements in a "contract" are not "commercial advertising or promotion"); *Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, 2017 WL 931712, at *5 (D.N.J. Mar. 9, 2017) ("instruction manuals are not advertisements or promotions").

Nor was the designation of certain PragerU videos for Restricted Mode part of an advertising or promotion or a misrepresentation as to the videos.  The designation and the reason for tagging videos to be unavailable in Restricted Mode are not made available to the public.  *See Coastal Abstract Serv., Inc.*, 173 F.3d at 735.

Furthermore, the fact that certain PragerU videos were tagged to be unavailable under Restricted Mode does not imply any specific representation about those videos. Although a false advertising claim may be based on implied statements, those statement must be both specific and communicated as to "deceive[] a significant portion of the recipients."  *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).  The only statement that appears on the platform is that the video is "unavailable with Restricted Mode enabled."  This notice does not have "a tendency to mislead, confuse or deceive" the public about the nature of

PragerU's videos.  *Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978).

YouTube's braggadocio about its commitment to free speech constitutes opinions that are not subject to the Lanham Act.  Lofty but vague statements like "everyone deserves to have a voice, and that the world is a better place when we listen, share and build community through our stories" or that YouTube believes that "people should be able to speak freely, share opinions, foster open dialogue, and that creative freedom leads to new voices, formats and possibilities" are classic, non-actionable opinions or puffery. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).  Similarly, YouTube's statements that the platform will "help [one] grow," "discover what works best," and "giv[e] [one] tools, insights and best practices" for using YouTube's products are impervious to being "quantifiable," and thus are non-actionable "puffery."  *Id.* The district court correctly dismissed the Lanham Act claim.

**AFFIRMED.**